RONALD A. X. STOKES *vs.* COMMISSIONER OF CORRECTION
& another.[1]

No. 87-132.

Norfolk. October 12, 1988. — November 16, 1988.

Present: WARNER, CUTTER, & FINE, JJ.

*Imprisonment,* Enforcement of discipline. *Due Process of Law,* Prison disciplinary proceeding.

Where a prison disciplinary board failed to comply with regulations of the Department of Correction, or with the due process requirements set forth in *Wolff* v. *McDonnell,* 418 U.S. 539 (1974), by its failure to set out in writing a statement of the evidence it relied upon in imposing certain disciplinary sanctions on a State prison inmate, material issues of fact remained for trial in a civil proceeding brought by the inmate challenging the lawfulness of those sanctions. [587-588]

Certain records of a State prison disciplinary board's proceedings were sufficiently specific as to the evidence relied on in imposing disciplinary sanctions on an inmate, and as to the reasons for the particular sanctions imposed, to satisfy the requirements of the regulations of the Department of Correction and of due process. [588-590]

CIVIL ACTION commenced in the Superior Court Department on August 13, 1982.

The case was heard by *Elbert Tuttle,* J., on a motion for summary judgment.

*John H. Cunha, Jr.,* for the plaintiff.

*William D. Luzier, Jr.,* Assistant Attorney General, for the defendants.

FINE, J. Ronald A. X. Stokes began serving a State prison sentence in 1979. Between that time and August 13, 1982, when he filed the complaint in this case against the Commissioner of Correction and the Superintendent of M.C.I., Cedar

---

[1] The superintendent of the Massachusetts Correctional Institution (M.C.I.) at Cedar Junction.

Junction, he accumulated a large number of disciplinary reports, many resulting in the imposition of sanctions against him. In his complaint, Stokes alleges that, with respect to sixty-eight disciplinary reports, the defendants acted in violation of prison regulations governing discipline, 103 Code Mass. Regs. § 430.17 (1978), and in violation of his right to due process under the United States Constitution.[2] Stokes filed a motion for partial summary judgment. All of the disciplinary reports in issue were before the court.[3] After hearing, Stokes's motion was denied, and summary judgment was ordered for the defendants on the entire complaint. The defendants did not comply with due process requirements or the Department of Correction's own regulations in a relatively small number of the disciplinary reports. As to these cases material issues of fact remain for trial. The matter must be remanded to the Superior Court.

Regulations of the Department of Correction (department), adopted pursuant to G. L. c. 124, § 1(q), provide, as far as material here, that a record of disciplinary proceedings shall include a written decision containing "[a] description of the evidence relied upon [by the disciplinary board] in reaching the guilty finding [and a] statement of the reasons for the sanctions imposed" (§ 430.17[1]) and, further, that "[t]he evidence relied upon for the guilty findings and the reasons for the sanction shall be set out in specific terms unless the hearing has involved use of informant information" (§ 430.17 [2]). In each instance referred to in the complaint, a correction officer signed a disciplinary report describing an offense, a hearing was held before a prison disciplinary board, and a decision was reached and recorded on a standard one-page department form. On each such form, there was space for the board to

---

[2] The defendant was seeking declaratory and injunctive relief and damages. We treat this as an action in the nature of certiorari, pursuant to G. L. c. 249, § 4. See *Hill* v. *Superintendent, M.C.I., Walpole,* 392 Mass. 198, 199 nn.2 & 3 (1984) rev'd on other grounds, 472 U.S. 445 (1985); *Murphy* v. *Superintendent, M.C.I., Cedar Junction,* 396 Mass. 830, 833 (1986).

[3] Some of the reports as they appear in the record appendix are illegible. That fact does not affect our ability to decide the case on appeal.

insert "a summary of the credible evidence," the "finding," the "sanction" imposed, and the "reasons for sanction and recommendation."

With respect to one category of cases (the first category), comprised of twenty-three disciplinary reports, the records of the disciplinary board's decisions did not bear any clear indication of the board's acceptance of the credibility of the officers' incident reports, nor did the board refer to other evidence supporting the charges.[4] These records fall short of what the department's regulations require. Compare *Wightman* v. *Superintendent, M.C.I., Walpole*, 19 Mass. App. Ct. 442, 446-447 (1985). It is true that in all cases copies of the correction officers' incident reports were attached to the records of the decisions. While it may be implicit in the board's disposition, it is impossible to tell from the face of the decision in any particular instance whether the board believed all, some, or none the contents of the officer's report.

---

[4] Stokes refers in his brief to this group of cases as "Category 1." Examples are as follows:

(1) #80-2284:  The correction officer's incident report stated, "On the above date at 12:40 pm I, Officer Kilnapp, while assisting in the locking-in procedures for B-2 returning from lunch, I was approached by Inmate Ronald Stokes #W37128 who said to me, 'Hey Kilnapp, as long as your mama is in my cell I'll stay in room 32! You know your mama don't you! She's that bitch who eats maggots!' This was witnessed C.O. Donnelly, C.O. Mazzalini and C.O. Huff. This is the second ticket of this nature and this inmates' verbal behavior is worsening each day. His verbal assaults are damaging to an officers' integrity, reputation and character." The disciplinary board decision states for the summary of credible evidence presented: "Plea/Inmate became abusive toward the board He was asked to leave the hearing." Stokes was found guilty of the charge and sentenced to ten days' isolation time.

(2) #81-1792:  Stokes was accused of "threatening another person (Staff member)" and "Use of obscene threatening language to a staff member." The incident report states: "At approx 12:20 PM this date while I was pouring beverage for Inmate Stokes he did state 'I will get you and maybe before you leave the tier. I will kick your ass before you leave.' Stokes also accused C/O Ayala of using dirty cups for the beverage." The decision relates the "summary of the credible evidence" as follows: "Plea/not guilty. Denies threatening anyone. States this is a figment of the officer's imagination." The board sentenced Stokes to five days' detention.

The department's regulations have the force of law, and the defendants are required to comply with their terms. See *Royce* v. *Commissioner of Correction*, 390 Mass. 425, 427 (1983); *Kenney* v. *Commissioner of Correction*, 393 Mass. 28, 33 (1984). Moreover, the United States Supreme Court held in *Wolff* v. *McDonnell*, 418 U.S. 539, 563-564 (1974), that an inmate facing State prison disciplinary proceedings, which could result in a deprivation of his or her liberty interests, has a right under the due process clause of the United States Constitution to be provided with a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." As we assume also was true of the department's regulations, the minimum standards required by the *Wolff* case were designed to ensure fair administrative decision making and to enable a reviewing court or agency to determine whether a prison disciplinary board's finding was "based on substantial evidence or whether it was sufficiently arbitrary so as to be a denial of the inmate's due process rights." *Chavis* v. *Rowe*, 643 F.2d 1281, 1287 (7th Cir. 1981).

Applying *Wolff*, courts routinely have held that records of decisions in disciplinary cases that merely state conclusions about guilt or use rote phrases do not satisfy the requirement that a disciplinary board state the rationale and evidentiary basis of a decision. See, e.g., *Redding* v. *Fairman*, 717 F.2d 1105, 1114-1115 (7th Cir. 1983), cert. denied, 465 U.S. 1025 (1984); *Scarpa* v. *Ponte*, 638 F. Supp. 1019, 1024-1026 (D. Mass. 1986). The *Wolff* requirements apply, even apart from the department's regulations, in at least the one case in the first category in which the disciplinary sanction imposed against Stokes included loss of statutory good time credits. As the loss of good time credits affected his liberty interests, he was entitled to the protection of the due process guarantees of the United States Constitution. See *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 389 (1983).

The prison board's disciplinary records in the remaining cases do not fall short of the minimum requirements of either the department's regulations or due process. Stokes claims as to these remaining cases that there is insufficient specificity

in the written decision as to the evidence the board relied on.[5] In each instance, other than cases in the first category, however, the board refers in its decision to the officer's incident report, and a copy of the full report is appended to the decision. All of the officers' reports appear to be self-validating. Contrast *Wightman* v. *Superintendent, M.C.I., Walpole,* 19 Mass. App. Ct. at 447. Thus, although more explanation might have been preferable, in each such decision the board's rationale is revealed, and there is at least a basis for a reviewing court or agency administrator to understand how the prison board reached the decision. See *Jensen* v. *Satran,* 688 F.2d 76, 78 (8th Cir. 1982); *Saenz* v. *Young,* 811 F.2d 1172, 1174 (7th Cir. 1987); *Culbert* v. *Young,* 834 F.2d 624, 631 (7th Cir. 1987). Contrast *Wightman* v. *Superintendent, M.C.I., Walpole,* 19 Mass. App. Ct. at 446-447; *Redding* v. *Fairman,* 717 F.2d at 1114-1115.

There is no merit in the complaints Stokes makes that in some cases the stated reason for the particular sanction imposed by the board is inadequate.[6] In those cases, the prison board

---

[5] Stokes refers in his brief to this group of cases as "Categories 2 and 3." An example is as follows:

\# 80-356: The correction officer's report stated, "On Monday 3/17/80 at approximately 10:15 AM while working in B-2, inmate Ronald Stokes said to me that I wanted him to sexually please me in order for me to make a telephone call for him. He said this to me because I wouldn't call the law library for him since I had already called for him once." The prison disciplinary board decision states as to the summary of credible evidence presented:

"Inmate requesting all members disqualify themselves from the board. New board members also asked to disqualify themselves from board. Denied 3/21/80. Report read . . . Inmate plea NOT GUILTY

Inmate states that he did not receive this report. Incident report shows that inmate did in fact receive report. Inmate claims that this is harassment because of a law suit filed against one of the officers. Request at hearing to phone his attorney because this report is slanderous. Request denied based on information that inmate did receive report."

The board found Stokes guilty, and sentenced him to 5 days' isolation.

[6] Stokes refers in his brief to this group of cases as "Category 4." The cases within this category are duplicative of reports contained in one of the three other categories.

stated reasons such as "behavior cannot be tolerated," "report and testimony," or "seriousness of offense, officer's report." In each such instance, it is implicit in the decision that the penalty was based on the board's view of the seriousness of the particular offense. So construed and viewed in its entirety, each record adequately justified the sanction. Thus, apart from the cases in the first category discussed, none of the defendant's disciplinary reports violated either the regulations or the requirements set out in *Wolff*.

The contention that the defendants failed to satisfy the applicable requirements as to the first category of cases discussed does not necessarily entitle Stokes to relief. There remain issues of fact to be tried. First, Stokes contests disciplinary reports and sanctions that date back to 1979. He first filed his complaint on August 13, 1982. It may well be that the delay in some of the cases would have made it impossible, even when the complaint was filed, for the defendants to retry Stokes on the disciplinary charges. If, as to any of the particular disciplinary reports, the defendants are able to show substantial prejudice resulting from the delay, they are entitled to have the complaint dismissed, as to those particular disciplinary reports, on grounds of laches. See *Kenney* v. *Commissioner of Correction*, 399 Mass. 137, 139-140 (1987).[7]

Secondly, it should be determined at trial whether Stokes waived his right to relief by failing to exhaust his administrative remedies. Under 103 Code Mass. Reg. § 430.18 (1978), he had an administrative appeal so long as he exercised this right within five days of receiving the board's written decision. In any case in which Stokes either did not take an appeal or took an appeal and failed to raise the issue of the required specificity of the written decision, he waived the right to have a reviewing court consider that contention. See *Langlitz* v. *Board of Registration of Chiropractors*, 396 Mass. 374, 382 (1985); *Medi-Cab of Mass. Bay, Inc.* v. *Rate Setting Commn.*, 401 Mass. 357, 364 (1987).

---

[7] Some of the earlier claims may be barred by the statute of limitations, G. L. c. 249, § 4.

Whether or not Stokes is found ultimately to be entitled to relief on any of his claims, it should be clear to the defendants that the department has a serious problem of poor record-keeping of its decision making in disciplinary matters. Various appellate decisions have referred in the past, as we do now, to these shortcomings. See, e.g., *Nelson* v. *Commissioner of Correction,* 390 Mass. at 396; *Hill* v. *Superintendent, M.C.I., Walpole,* 392 Mass. 198, 201-202 (1984), revd. on other grounds, 472 U.S. 445 (1985). We are aware of the burdens on correction staff members and the fact that they are not likely to be trained as lawyers. The individuals charged with the important responsibility of enforcing prison discipline must, however, prepare written decisions which at least reflect, however briefly, the thinking processes that led the prison board to believe the inmate committed the charged offense and to determine that a particular sanction was appropriate. To require compliance with the applicable procedural rules will serve not only to make the process of imposing discipline on prison inmates more fair, but to assure the inmates and the public of the integrity of the process. Improvements in the recording forms could be of assistance.

Summary judgment is affirmed as to all the disciplinary reports which are not in the first category. Summary judgment is vacated as to all the disciplinary reports in the first category. The case is remanded to the Superior Court for further proceedings consistent with this opinion relating to the remaining disciplinary reports in the first category.

*So ordered.*