**Ramadan SHABAZZ, Plaintiff,**

v.

**Kathleen A. COLE and James Matesanz, Defendants.**

**No. Civ.A. 96–10486–MBB.**

United States District Court, D. Massachusetts.

Aug. 24, 1999.

---

**37.** See footnote number 31.

Ramadan Shabazz, Norfolk, MA, plaintiff pro se.

Judith Buckley Hayman, Nancy White, Joan T. Kennedy, Department of Correction, Boston, MA, for Kathleen A. Cole, James Matesanz, defendants.

## MEMORANDUM AND ORDER

BOWLER, United States Magistrate Judge.

On August 13, 1999, after hearing five days of testimony and closing arguments, a jury returned a special verdict in favor of defendants Kathleen A. Cole ("Cole"), librarian at Bay State Correctional Center ("BSCC") in Norfolk, Massachusetts during the relevant time period, and James Matesanz ("Matesanz"), Superintendent at BSCC, on the remaining jury issues in the above styled civil rights action.[1] This

1. On June 25, 1999, this court issued a Memorandum and Order eliminating a number of the claims. This court dismissed the first cause of action, which alleges a violation of 42 U.S.C. § 1983 ("section 1983"), against Matesanz due to the absence of supervisory liability but denied Cole qualified immunity. In answering the special interrogatories, however, the jury found that plaintiff Ramadan Shabazz ("Shabazz") failed to establish this claim by a preponderance of the evidence.

This court also dismissed the second and fourth causes of action alleging a violation of section 1983 and the Massachusetts Civil Rights Act ("MCRA"), Massachusetts General Laws chapter 12, section 11H and I. With respect to the third cause of action, this court found that Matesanz was not liable under section 1983 due to the absence of supervisory liability and entitled to qualified immunity on the MCRA claim. As to Cole, the jury found that Shabazz failed to establish the necessary elements of the section 1983 and the MCRA claims set forth in the third cause of action.

As explained in the June 25, 1999 Memorandum and Order, the fifth and sixth causes of action challenging defendants' failure to adhere to prison regulations in Shabazz' individual disciplinary proceedings were in the nature of certiorari under section four of Massachusetts General Laws chapter 249 ("chapter 249"). Consequently, as noted in the June 25, 1999 Memorandum and Order, even though Shabazz cites to sections one through eight of Massachusetts General Laws chapter

30A in these causes of action, he must proceed under chapter 249. See Docket Entry # 152, pp. 15–16; see also McLellan v. Commissioner of Correction, 29 Mass.App.Ct. 933, 558 N.E.2d 3, 4 (1990) (deeming complaint challenging disciplinary hearings as improperly filed under chapter 231A as opposed to chapter 249); Mass.Gen.L. ch. 30A, § 7 (providing cause of action for declaratory relief under chapter 231A). As also set forth in the June 25, 1999 Memorandum and Order, the fifth and sixth causes of action were untimely as to the first disciplinary hearing and timely as to the second disciplinary hearing which took place on December 1, 1995. Accordingly, this court denied defendants' motion to dismiss (Docket Entry # 79) the fifth and sixth causes of action with respect to the second hearing on statute of limitations grounds. At trial, defendants waived their statute of limitations defense as to the second hearing. These causes of action with respect to the second hearing were therefore tried to this court based on the administrative record. See Stetson v. Board of Selectmen of Carlisle, 369 Mass. 755, 343 N.E.2d 382, 385 (1976) (chapter 249 certiorari action "should be decided on the record before the governmental agency ... and a judge will decide the case").

In answer to a special verdict question, the jury determined that Shabazz failed to establish the necessary elements of his seventh cause of action for conversion. At trial, Shabazz decided to forego his claim for injunctive relief due to Cole's retirement from her librarian position at BSCC. Shabazz' claim for de-

opinion addresses the fifth and sixth causes of action in the nature of certiorari under chapter 249 concerning the second disciplinary hearing.

Under the fifth and sixth causes of action, Shabazz asserts that Matesanz and Cole ("defendants") violated the Massachusetts Code of Regulations and the state constitution. Specifically, in the fifth cause of action, Shabazz asserts that the disciplinary hearing officer violated 103 C.M.R. §§ 430 *et seq.* and articles one, ten and 12 of the state constitution by finding him guilty without sufficient evidence. In the sixth cause of action, Shabazz contends that defendants denied him the right to produce witnesses and documentary evidence thereby violating 103 C.M.R. §§ 430 *et seq.* and articles one, ten and 12 of the state constitution.[2]

## BACKGROUND

The administrative record, consisting of exhibit O and the tape recording of the December 1, 1995 disciplinary hearing, show the following.

On October 25, 1995, Cole issued a disciplinary report against Shabazz. Therein, she cited Shabazz for insolence toward a staff member and conduct which disrupts the orderly running of the institution. 103 C.M.R. §§ 430.24(1) & (8).[3]

The disciplinary report details an incident occurring in the BSCC library on October 25, 1995. As reported by Cole in describing the offense, Shabazz requested seven photocopies of a two page document. When Cole informed Shabazz that he would have to pay for the photocopying, he became loud and agitated. After quieting down, Shabazz completed a second institutional money slip for the photocopies. He then requested seven white envelopes from

Cole. In accordance with instructions from the Deputy Superintendent, Cole told Shabazz that such envelopes were used for sending mail outside BSCC as opposed to sending mail within the institution. After Cole determined that four of the seven envelopes were addressed to BSCC staff, Shabazz became extremely agitated and loud. He also continued to harass Cole. (Ex. O).

Section 478.11 of chapter 103 of the Code of Massachusetts Regulations, entitled "Legal Services," sets forth the photocopying policy for legal documents at correctional institutions such as BSCC. The regulation provides that: "All photocopying requests shall be compiled within reasonable amounts at no charge. In order to provide photocopying services to all inmates, the Superintendent may establish guidelines and limits, subject to the review of the Commissioner or his/her designee." 103 C.M.R. § 478.11(b).

The infractions in the disciplinary report were designated as major and Shabazz received a copy of the report prior to the scheduled hearing. In anticipation of the hearing, Shabazz requested the presence of five inmate witnesses with the notation that counsel would make the final choices. The inmate witnesses are as follows: Wendell Greenman ("Greenman"), Charles Taylor ("Taylor"), David Furlani ("Furlani"). Omar Abdullah ("Abdullah") and Robert Gonzalez ("Gonzalez"). In accordance with 103 C.M.R. §§ 430.11(5) and 430.14(4), Shabazz completed a request for representation and witness form listing the aforementioned witnesses and describing their expected testimony.

Two students from the Harvard Prison Legal Assistance Program represented

---

claratory relief was tried to this court. As explained *infra,* due to the absence of underlying liability, as set forth in the June 25, 1999 Memorandum and Order, the jury's answers to the special verdict questions and this opinion, such relief is denied.

**2.** Plaintiffs' citation to chapter 30A does not provide a basis for relief. *See* footnote one.

**3.** Section 430.24 of chapter 103 of the Code of Massachusetts Regulations contains a list of disciplinary offenses. Subsections (1) and (8) respectively prescribe the following acts as offenses: "(1) Disobeying an order of, lying to, or insolence toward a staff member;" and "(8) Conduct which disrupts or interferes with the security or orderly running of the institution." 103 C.M.R. §§ 430.24(1) & (8).

Shabazz in connection with the October 25, 1995 incident. In an undated facsimile transmission to the hearing officer prior to the December 1, 1995 hearing, Shabazz' student attorneys requested testimony from Furlani, Abdullah and Greenman and an opportunity to inspect five categories of documents prior to the hearing.[4]

After two continuances, the hearing took place on December 1, 1995. The above noted students from the Harvard Prison Legal Assistance Program represented Shabazz at the hearing. At the outset of the hearing, the hearing officer accepted five affidavits from Greenman, Taylor, Furlani, Abdullah and Gonzalez into the record but denied Shabazz' motion to dismiss the charges based on the affidavits.

Shabazz' student attorneys then requested that the hearing officer address their discovery requests.[5] With respect to the category of documents introduced at the hearing, the hearing officer cited two documents and stated that they would be able to get copies of the documents and that the documents would be included in a packet, presumably provided to Shabazz' student attorneys. As to the second category (incident reports), the hearing officer stated that there were no such incident reports other than the disciplinary report in question. Shabazz' student attorneys appeared satisfied and did not object to the hearing officer's resolution of these first two categories of discovery requests.

The hearing officer next considered Shabazz' student attorneys' request for staff evaluations and personnel files regarding Cole. He denied the discovery request as irrelevant and further explained that the proceeding was only a fact finding inquiry into what happened on October 25, 1995. Shabazz' student attorneys objected to the hearing officer's ruling.

As to the fourth and final category of discovery requests addressed at the hearing, the hearing officer listed the requested documents as the library services policy and the library rules. He further noted that such documents would be included in the packet. Shabazz' student attorneys reviewed the documents at the hearing and did not object to the resolution of this request.

Shabazz' student attorneys also moved to admit certain documents at the hearing. First, they requested admission of an affidavit from a Boston University professor, Shabazz' former teacher, in order to demonstrate that Shabazz was cooperative and courteous. The hearing officer denied the request because the professor was not present at the time of the October 25, 1995 incident and he was only concerned with what took place on October 25, 1995. Shabazz' student attorneys objected to the exclusion of the affidavit from the record.

The hearing officer also rejected as irrelevant the request by Shabazz' student attorneys to admit Shabazz' disciplinary history. The hearing officer also explained that he would consider Shabazz' disciplinary history in the event of a guilty finding. *See* 103 C.M.R. § 430.16(2). Shabazz' student attorneys objected to the hearing officer's ruling.

 The final category of documents which Shabazz' student attorneys requested the hearing officer to consider was the disciplinary ticket issued by Cole against Shabazz in 1994. Restricting the testimony and documentary evidence to what happened on October 25, 1995, and characterizing the ticket as irrelevant, the hearing officer refused the request to admit the prior disciplinary ticket. Maintaining that the disciplinary ticket was relevant with

---

4. These categories are for: (1) documents introduced at the hearing; (2) incident reports in relation to the incident; (3) staff evaluations and personnel files for Cole; (4) documents relating to BSCC's photocopying policies; and (5) documents relating to the disciplinary charges on the disciplinary tick-

et. At the hearing, Shabazz' student attorneys limited their request to the first four categories by not addressing the fifth category.

5. See footnote number four.

respect to the relationship between Cole and Shabazz, Shabazz' student attorneys objected to the ruling.[6]

Also at the hearing, Shabazz' student attorneys requested that two inmates testify on behalf of Shabazz. The hearing officer denied the request because he viewed the testimony as similar to the information supplied by these inmates in their affidavits. Shabazz' student attorneys objected to the exclusion of the live testimony. They noted that such testimony was relevant because the two inmate witnesses were present at the time of the October 25, 1995 incident, witnessed the same events as Cole and saw something completely different.

Both Shabazz and Cole testified at the hearing. Shabazz denied being loud or agitated. He also explained that he wanted Cole to photocopy a letter addressed to Matesanz complaining about BSCC's photocopying policies. The letter, dated October 26, 1995, questions the practice of charging inmates for photocopying legal documents. The hearing officer generally restricted Shabazz' testimony to what happened on October 25, 1995.

Cole testified that she inspected the document which Shabazz wished to photocopy. Upon ascertaining that it was addressed to Matesanz, she determined it was not a legal document. She also inspected the envelopes and saw that a number of the envelopes were addressed to BSCC staff. In addition, Cole refused to answer several questions posed by Shabazz' student attorneys and interrupted their questioning a number of times. When asked about Shabazz' loudness, she characterized his tone of voice as inappropriate.

6. Cole lodged the disciplinary report against Shabazz in November 1994. The disciplinary officer dismissed the charges. During the trial, this court heard at length the nature of the past relationship between Cole and Shabazz. Without summarizing the testimony in detail, Shabazz was never rude, insolent or loud to BSCC staff during his stay at BSCC. Like 85% of the inmates at BSCC, Shabazz was respectful to others at the institution. Except for the two disciplinary reports issued by Cole in 1994 and 1995, there was no evidence that Shabazz had a history of misconduct while at BSCC. To the contrary, he acted in a respectful manner to BSCC staff including Cole, notwithstanding her demeaning attitude towards Shabazz. On an intermittent basis, Cole occasionally used racial slurs uniformly against Shabazz and other minority inmates as well as against inmates who smoked cigarettes during her 1991 to 1997 tenure at the library. One inmate did not file a grievance against Cole for fear of being transferred from BSCC. In November 1994 Shabazz resigned his law clerk position at the library due to Cole's mistreatment which culminated in a November 1994 incident when Shabazz refused to work on his day off. This incident led to Cole filing the aforementioned November 1994 disciplinary report against Shabazz which the hearing officer dismissed.

Also without summarizing at length the testimony which this court has heard and fully reviewed concerning BSCC's policy of photocopying of legal documents, Cole typically would inspect documents which an inmate wished to photocopy. If she determined that the document was not a legal document, she would have the inmate complete a charge slip authorizing a debit from his institutional account. Money received for such photocopies would eventually be placed in the inmate canteen fund, a fund used for the benefit of inmates. An inmate could appeal Cole's determination to her supervisor and/or the Deputy Superintendent or the Superintendent. In general, Cole as well as the Deputy Superintendent restricted the interpretation of legal documents to documents filed in court or sent to an inmate's attorney as well as cases when filed as attachments to a court brief.

Notwithstanding this and other testimony presented during the five day trial, in deciding the certiorari claims under chapter 249 *infra* in the discussion section, this court limits its review to the record developed before the hearing officer in the second disciplinary hearing. *See Stetson v. Board of Selectmen of Carlisle*, 369 Mass. 755, 343 N.E.2d 382, 385 (1976) (chapter 249 claim "should be decided on the record developed before the governmental agency"); *Malone v. Civil Service Commission*, 38 Mass.App.Ct. 147, 646 N.E.2d 150, 151 (1995) (judicial review under chapter 249 "is limited to correcting substantial errors of law that are apparent on the record"). Accordingly, the August 9 to 12, 1999 testimony summarized *supra* is not a complete summary of the entire record and is provided for background purposes.

In a written decision, the hearing officer found Shabazz not guilty on the charge of disrupting the orderly running of the institution. After discounting two of the five inmate affidavits because one inmate did not witness the incident and the other was not objective, the hearing officer found Shabazz guilty of the charge of insolence toward a staff member. As stated in his written decision, the hearing officer based the guilty finding on the disciplinary report and Cole's testimony during the hearing. The hearing officer then reduced the disciplinary charge from a major to a minor infraction and sanctioned Shabazz to one week's loss of library privileges, albeit "excluding use of the law library." (Ex. O).

The documentary evidence accepted into the record at the hearing and noted in the written decision consisted of the disciplinary report, the five inmate affidavits, the BSCC legal supplies request log sheet, the BSCC law library attendance sheet, four envelopes addressed to BSCC administrators including Matesanz, a BSCC photocopy request and a BSCC charge slip. The written decision lists the aforementioned five inmate witnesses with the notation, "See Affidavit." Otherwise, the written decision itself fails to reflect the hearing officer's reasons for excluding the live testimony of the two inmate witnesses, the affidavit by the Boston University professor, Shabazz' disciplinary history and the disciplinary ticket issued by Cole in 1994.

In a three page brief dated December 14, 1995, one of Shabazz' student attorneys filed an appeal to Matesanz. The student attorney argued that there was insufficient evidence to support the finding that Shabazz was insolent. The student attorney additionally objected to the exclusion of testimony from the inmate witnesses. He also contended that the hearing officer improperly excluded the evidence regarding Cole's issuance of disciplinary charges against Shabazz in 1994.

On December 28, 1995, Matesanz denied the appeal in a written decision. After reviewing the record, Matesanz concluded that the findings were supported by the evidence presented at the hearing and therefore upheld the sanction. Sergeant Paul Glynn's signature, dated December 29, 1995, also appears on the written decision denying the appeal. (Ex. O). On February 27, 1996, Shabazz filed the present lawsuit.

## DISCUSSION

Judicial review under section four of chapter 249 "is limited to correcting 'substantial errors of law that affect material rights and are apparent on the record.'" *Gloucester v. Civil Service Commission*, 408 Mass. 292, 557 N.E.2d 1141, 1144 (1990). The inquiry involves ascertaining whether the governmental decision "was 'legally tenable and supported by substantial evidence on the record as a whole.'" *Gloucester v. Civil Service Commission*, 557 N.E.2d at 1144 (further noting that, "Substantial evidence is 'such evidence as a reasonable mind might accept as adequate to support a conclusion'"). Accordingly, the relevant question is whether the hearing officer "substantially erred in a way that materially affects the rights of the parties." *Gloucester v. Civil Service Commission*, 557 N.E.2d at 1144.

In other words, the function of a writ of certiorari is "' to correct errors of law committed by a judicial or quasi judicial tribunal where such errors ... are so substantial and material that, if allowed to stand, they will result in manifest injustice.'" *Johnson Products, Inc. v. City Council of Medford*, 353 Mass. 540, 233 N.E.2d 316, 318 n. 2, *cert. denied*, 392 U.S. 296, 88 S.Ct. 2061, 20 L.Ed.2d 1108 (1968). Moreover, Shabazz is not entitled to a hearing *de novo* concerning the propriety of the hearing officer's conduct at his individual disciplinary hearing. *See Nelson v. Commissioner of Correction*, 390 Mass. 379, 456 N.E.2d 1100, 1106 n. 12 (1983). Rather, this court examines the record as a whole to determine if it contains "substantial evidence to support the prison dis-

ciplinary board's decisions." *Murphy v. Superintendent, Massachusetts Correctional Institution, Cedar Junction,* 396 Mass. 830, 489 N.E.2d 661, 663 (1986).

Viewed in this framework, Shabazz respectively contends in the fifth and sixth causes of action that the hearing officer substantially erred in a manner which materially affected his rights by: (1) finding him guilty of insolence toward Cole in violation of 103 C.M.R. § 430.24(1) without sufficient evidence; and (2) denying him the opportunity to present witness testimony and documentary evidence at the December 1, 1995 hearing. (Docket Entry # 6, ¶¶ 51 & 52). Shabazz submits that defendants therefore violated the state constitution and the Massachusetts Code of Regulations applicable to inmate disciplinary proceedings, 103 C.M.R. §§ 430 *et seq.*

### I. Insufficient Evidence (Shabazz' Fifth Cause of Action)

Turning to the alleged state constitutional violation, "the concepts of due process expressed in art. 12 are applicable to prison disciplinary proceedings." *Murphy v. Superintendent, Massachusetts Correctional Institution, Cedar Junction,* 489 N.E.2d at 663. The applicable standard when an inmate challenges the finding of a prison disciplinary board is one of substantial evidence.[7] *Murphy v. Superintendent, Massachusetts Correctional Institution, Cedar Junction,* 489 N.E.2d at 663 ("inmates' State due process challenges are adequately met if record contains substantial evidence to support the prison disciplinary board's decision"). Substantial evidence consists of evidence which " 'a reasonable mind might accept as adequate to support a conclusion' " or, stated otherwise, " 'evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs' ". *Murphy v. Superintendent, Massachusetts Correctional Institution, Cedar Junction,* 489 N.E.2d at 663 (quoting 103 C.M.R.

§ 430.13(3) (1978) and Mass.Gen.L. ch. 30A, § 1(6) (1984 ed.)).

Applying this standard to the case at bar, the description of the offense in the disciplinary report is relatively detailed and supports the hearing officer's finding Shabazz guilty of insolence toward a staff member. Cole's testimony at the hearing provides additional support for the decision. Together, the disciplinary report and the testimony of Cole, as the reporting officer, establish the necessary substantial evidence to support the hearing officer's finding. *See, e.g., Connors v. Maloney,* 1992 WL 75170 at * 2 (D.Mass. April 4, 1992) (finding substantial evidence and noting that disciplinary report reflected "a decision to believe the officer's report rather than the inmate's denial"). Although, in listening to the taped proceedings of the hearing, this court might not have reached the same conclusion, this court cannot substitute its judgment for that of the hearing officer. *See Cepulonis v. Commissioner of Correction,* 15 Mass.App.Ct. 292, 445 N.E.2d 178, 180 (1983) (although testimony at inmate disciplinary hearing "could lead to different inferences, 'a court may not displace the board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo* ' "). Substantial evidence supports the hearing officer's decision and, accordingly, Shabazz' assertion that the hearing officer lacked sufficient evidence under the state constitution is unconvincing.

Turning to the allegation that the hearing officer violated the pertinent regulations by the alleged lack of sufficient evidence, "The remedy for failure to adhere to regulations in prison disciplinary proceedings is an action in the nature of certiorari under G.L. c. 249, § 4." *Ford v. Commissioner of Correction,* 27 Mass.App. Ct. 1127, 537 N.E.2d 1265, 1266, *review denied,* 405 Mass. 1202, 541 N.E.2d 344

---

7. In contrast, the federal Constitution simply requires the presence of "some evidence" to support a disciplinary board's findings. *Su-*

*perintendent v. Hill,* 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

(1989); *see, e.g., Wightman v. Superintendent, Massachusetts Correctional Institution, Walpole,* 19 Mass.App.Ct. 442, 475 N.E.2d 85, 85–89 (1985). The Department of Corrections' "regulations have the force of law, and the defendants are required to comply with their terms." *Stokes v. Commissioner of Correction,* 26 Mass.App.Ct. 585, 530 N.E.2d 801, 803, *review denied,* 403 Mass. 1106, 532 N.E.2d 690 (1988).

The regulations provide that, "The proponent of the disciplinary report shall have the burden of proving the offense(s) by a preponderance of the evidence." 103 C.M.R. § 430.16(1). In addition, the hearing officer may consider the reporting officer's statements in the disciplinary report in determining the inmate's guilt or innocence. 103 C.M.R. § 430.14(5).

■ In the case at bar, the disciplinary report was self validating and adequately described a violation of 103 C.M.R. § 430.24(1). Taken together with Cole's testimony, the hearing officer could properly conclude that Cole met her burden of establishing that Shabazz committed the offense. As previously indicated, review in the nature of certiorari of a prison disciplinary hearing is not *de novo* and does not involve "judicial second guessing of the credibility of witnesses or the adoption of inferences."[8] *Jordan v. Dubois,* 1999 WL 317344 (Mass.Super. May 1999); *accord Cepulonis v. Commissioner of Correction,* 445 N.E.2d at 179. The hearing officer complied with the relevant regulations with respect to finding Shabazz guilty of violating 103 C.M.R. § 430.24(1). Substantial evidence supported his conclusion and Cole met her burden of proof in establishing the offense.

**8.** If it did, this court would question Cole's credibility in light of her antagonistic attitude and tone of voice when questioned by Shabazz' student attorneys. She repeatedly interrupted their questioning and refused, on several occasions, to answer their questions.

**9.** Article 12, however, does not contain the language of the Fourteenth Amendment that no state shall deprive a person "of life, liberty, or property, without due process of law."

## II. *Denial of Witness Testimony and Documentary Evidence at the Hearing (Shabazz' Sixth Cause of Action)*

In addition to claiming that the hearing officer lacked sufficient evidence, Shabazz contends that the hearing officer improperly excluded witness testimony and documentary evidence at the disciplinary hearing in violation of the state constitution and the Massachusetts Code of regulations applicable to inmate disciplinary proceedings, 103 C.M.R. §§ 430 *et seq.* (Docket Entry # 6, ¶ 52).

Addressing the state constitutional claim, the Massachusetts Supreme Judicial Court ("the SJC") generally treats "the procedural due process protections of the Massachusetts and United States Constitution identically."[9] *Bielawski v. Personnel Administrator of the Division of Personnel Administration,* 422 Mass. 459, 663 N.E.2d 821, 827 (1996). Stated otherwise, the SJC "has never held that the due process provisions of our State Constitution (Part II, c. 1, § 1, art. 4; arts. 1, 10, and 12 of the Declaration of Rights) provide inmates with more extensive rights than those available under the Federal Constitution; rather the court has consistently equated as comparable, both generally and in the prison environment, the due process protections of the two fundamental documents." *Hudson v. Commissioner of Correction,* 46 Mass.App.Ct. 538, 707 N.E.2d 1080, 1081–1083 (1999) (collecting cases), *review granted,* 430 Mass. 1102, 714 N.E.2d 354 (1999). Thus, as recently confirmed by the SJC, "Although there are situations in which this court has interpreted art. 12 of our Declaration of Rights as extending greater protection than parallel

U.S. Const. amend. XIV, § 1. Article 12 reads, in pertinent part, that, "No subject shall be held to answer for any crimes or offence, until the same is fully ... described to him.... And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defense by himself, or his counsel, at his election." Mass. Gen.L. Const., Pt. 1, art. 12.

provisions in the United States Constitution, our treatment of due process challenges to legislation has adhered to the same standards as those applied in Federal due process analysis." *Commonwealth v. Ellis,* 429 Mass. 362, 708 N.E.2d 644, 650 (1999) (citations omitted). Accordingly, this court looks to the due process protections afforded under the Fourteenth Amendment as well as under the Declaration of Rights in assessing the merits of Shabazz' sixth cause of action.

▮▮ An inmate facing disciplinary proceedings has "a qualified right to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *McGuinness v. Dubois,* 75 F.3d 794, 797–798 (1st Cir.1996) (summarizing one of the three due process protections afforded under the Constitution as interpreted by the Supreme Court in *Wolff v. McDonnell,* 418 U.S. 539, 563–567, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). In denying a request for live defense witnesses, a hearing officer should make an individualized decision based on the facts of the particular case. *McGuinness v. Dubois,* 75 F.3d at 799.

▮▮ Like the plaintiff in *McGuinness,* who was denied live testimony by inmate witnesses but allowed to proffer their affidavits, Shabazz' student attorneys did not articulate what the two inmate witnesses' testimony would have added except to note that they were present during the incident and would offer testimony different from Cole's testimony.[10] *See McGuinness v. Dubois,* 75 F.3d at 800 (finding no constitutional violation and noting that the plaintiff never suggested what the "live testimony would have added, other than that [the inmate affiants] would have been able to 'explain what they saw much better'"). "'Prison officials must

have the necessary discretion to keep a disciplinary hearing within reasonable limits.'" *Smith v. Massachusetts Department of Correction,* 936 F.2d 1390, 1399–1400 (1st Cir.1991) (quoting *Wolff,* 418 U.S. at 566, 94 S.Ct. 2963). Mindful of the deference afforded prison officials and the standard of review applicable to a chapter 249 claim, the hearing officer made the logical and permissible decision to limit the hearing and exclude the testimony from the two inmate witnesses because such testimony duplicated statements in the affidavits. The accommodation did not deny Shabazz the opportunity to present contradicting evidence or to adequately defend himself against the charges. *See, e.g., Abrazinski v. DuBois,* 940 F.Supp. 361, 364 (D.Mass.1996) (noting that submission of inmate affidavits in lieu of live testimony of inmates incarcerated at other institutions did not deny the plaintiff opportunity to present contradicting evidence at disciplinary hearing). In sum, the hearing officer's decision was not a substantial error which would result in manifest injustice sufficient to permit relief under chapter 249.

▮▮ For similar reasons, the hearing officer's decision to exclude documentary evidence of the 1994 disciplinary report, Shabazz' disciplinary history and the Boston University professor's affidavit did not violate Shabazz' state constitutional rights to due process. The hearing officer limited the hearing to testimony involving what happened on the day of the incident. Although this court would not have imposed the same limitation, this court's review is not *de novo.* A prison official has the discretion to place reasonable limits upon an inmate's ability to compile documentary evidence. *See Smith v. Massachusetts Department of Correction,* 936 F.2d at 1399 (quoting *Wolff,* 418 U.S. at

10. Although Shabazz and his student attorneys requested live testimony from additional inmate witnesses prior to the hearing, they only requested the testimony of two witnesses at the hearing. Thus, they apparently decided to forgo their earlier requests for the testimony of three and/or five inmate witnesses. "[Failure] to request" the live testimony of an inmate/witness "obviously precludes any due process violation." *Harrison v. Seay,* 856 F.Supp. 1275, 1281 (W.D.Tenn.1994).

566, 94 S.Ct. 2963). Limiting the hearing to the events which took place on October 25, 1995, and excluding tangential evidence of Shabazz' prior disciplinary record, the 1994 disciplinary report and the affidavit was a reasonable accommodation in a prison setting which did not deprive Shabazz of the opportunity to rebut the allegation that he was insolent to Cole on October 25, 1995. The hearing officer reasonably concluded that the documentary evidence was not directly germane to whether Shabazz was insolent on October 25, 1995, in violation of 103 C.M.R. § 430.24(1). Accordingly, mindful of the standard of review and the discretion afforded the hearing officer's determination, the decision to exclude the documentary evidence was not a substantial error which materially affected Shabazz' state constitutional rights within the meaning of chapter 249.

 Turning to the alleged violation of the Code of Massachusetts Regulations, these regulations allow an inmate to call witnesses in his defense and "to present other evidence, when permitting him to do so will not be unduly hazardous to personal safety, institutional safety or correctional goals." 103 C.M.R. § 430.14(4). In excluding the testimony and documentary evidence, however, the hearing officer may consider the relevance of the testimony or the documentary evidence and "[w]hether the evidence is cumulative or repetitive." 103 C.M.R. § 430.14(4). In addition, as implicitly recognized by the hearing officer, the regulations prohibit the hearing officer from considering an inmate's disciplinary chronology in determining the inmate's guilt. Specifically, "The inmate's disciplinary chronology shall not be considered by the hearing officer in determining the guilt or innocence of the inmate but it

may be considered in deciding the appropriate sanction." 103 C.M.R. § 430.16(2).

As provided for by the regulations, the hearing officer concluded that the testimony of the two inmate witnesses was cumulative to the statements in their affidavits. He excluded the documentary evidence because he did not consider it relevant to what happened on the day of the incident. In addition, the regulations did not authorize him to consider Shabazz' past disciplinary history in finding Shabazz guilty of violating 103 C.M.R. § 430.24(1). Such determinations lay within the discretion of the hearing officer and did not amount to substantial error. To the contrary, the hearing officer complied with the relevant regulations in deciding to exclude witness testimony and documentary evidence.[11] Accordingly, Shabazz' rights were not materially affected and he is not entitled to relief under chapter 249 on this basis.

 To the extent Shabazz objects to the denial of certain discovery requests (Docket Entry # 6, ¶ 38), the hearing officer provided adequate reasons to deny the discovery requests posed by Shabazz' student attorneys at the hearing. *See Smith v. Department of Correction*, 936 F.2d at 1401 (where inmate seeks relevant documents central to defense, hearing officer should furnish explanation for denying discovery). In particular, the hearing officer noted that Shabazz' student attorneys would receive copies of two documents in a packet, explained that there were no other incident reports relative to the October 25, 1995 incident, concluded that staff evaluations of Cole and her personnel file were irrelevant to what happened on October 25, 1995, and identified the photocopying policies included in the packet presumably provided to Shabazz' student attorneys.

11. While recognizing Shabazz' *pro se* status, this court does not construe his sixth cause of action as alleging a violation of the regulations by the hearing officer's failure to prepare a written decision explaining the exclusion of the witnesses' testimony and documentary evidence. *See* 103 C.M.R. § 430.17(1)(c). Although Shabazz raises

other allegations relative to the disciplinary hearing (Docket Entry # 6, ¶¶ 38, 42, 51 & 52) addressed above and *infra*, the complaint does not allege that the written decision is deficient because it fails to explain the reasons for excluding the witnesses' testimony and documentary evidence.

Shabazz' student attorneys only objected to the hearing officer's denial of their discovery request for staff evaluations and Cole's personnel file. The hearing officer's explanations were sufficient as well as adequate. His failure to address the catch-all, fifth category of documents, i.e., any and all documents related to the charges against Shabazz, did not materially affect Shabazz' rights inasmuch as Shabazz' student attorneys had or knew of the documents which would be introduced at the hearing. Nor did they reassert this request at the hearing. The hearing officer's denial of the discovery requests, therefore, did not amount to substantial error materially affecting Shabazz' state constitutional rights. The hearing officer's denial of the discovery requests also did not violate the Massachusetts Code of Regulations.[12]

 To the extent Shabazz contends that "the hearing officer failed to state what testimony supported the conclusion he reached," i.e., the conclusion in finding Shabazz guilty of violating 103 C.M.R. § 430.24(1) (Docket Entry # 6, ¶ 42), the hearing officer's actions did not constitute substantial error materially affecting Shabazz' state constitutional rights or the relevant regulation. With respect to the former and inasmuch as federal due process protections parallel those of the state constitution, the hearing officer must provide the inmate with "a written statement of the evidence relied upon and the reasons for the disciplinary action." *McGuinness v. Dubois*, 75 F.3d at 798 (citing *Wolff*, 418 U.S. at 563–567, 94 S.Ct. 2963). Under the regulations, the hearing officer must "set out in specific terms" the evidence which he relied upon to find the inmate guilty "and the reasons for the sanction." 103 C.M.R. § 430.17(2). The written statement of the evidence relied upon should "reflect, however briefly, the thinking process that led the prison board

to believe the inmate committed the charged offense and to determine that a particular sanction was appropriate." *Stokes v. Commissioner of Correction*, 530 N.E.2d at 805; *accord McLellan v. Acting Superintendent, M.C.I., Cedar Junction*, 29 Mass.App.Ct. 122, 558 N.E.2d 5, 7 (1990) (quoting *Stokes*).

 The hearing officer adequately set forth his findings in a written decision. In the decision, he explained that he found Shabazz guilty of violating 103 C.M.R. § 430.24(1) "based on Ms. Cole's 'D' Report and Ms. Cole's statements during the hearing." He also fully explained his reasons for discounting Furlani's and Greenman's affidavits. Although brief, such statements adequately comply with 103 C.M.R. § 430.17(2) and comport with due process under the state constitution. *See, e.g., Stokes v. Commissioner of Correction*, 530 N.E.2d at 804 (stated reasons of " 'report and testimony' " deemed sufficient explanation under the regulations and *Wolff*). The hearing officer also adequately set forth his thinking process with respect to reducing the designation from major to minor and imposing the sanction of a one week loss of library privileges, excluding use of the law library. In the written decision, the hearing officer explained that, "The sanction is in line with the seriousness of the offense and will not be taken lightly. Inmate Shabazz needs to be held accountable and realize the severity of his actions." (Ex. O).

 In short, Shabazz is not entitled to relief under chapter 249 with respect to the second disciplinary hearing. To the extent Shabazz seeks declaratory relief under the fifth and sixth causes of action, such relief is not available where, as here, Shabazz challenges the findings of his own disciplinary hearing. *McLellan v. Commissioner of Correction*, 29 Mass.App. Ct. 933, 558 N.E.2d 3, 4 (1990) (declaratory

---

12. The Massachusetts Code of Regulations does not address an inmate's right to conduct discovery. Rather, the regulations simply provide that the inmate shall receive "the disciplinary report, a notice of hearing, and a request for representation and/or witness form" within one weekday of the offense being designated "a major matter." 103 C.M.R. § 430.11(1).

relief under Mass.Gen.L. ch. 231A "is not 'an appropriate remedy where the validity of an adjudication by the [disciplinary] board in an individual case is being challenged'"). In the alternative, declaratory relief that Shabazz was denied the opportunity to call witnesses and produce documentary evidence and issued a false disciplinary charge in violation of the United States Constitution and state law is, for reasons already explained, inappropriate. There was substantial as well as some evidence to support the charge that Shabazz was insolent to a staff member and his federal as well as state due process rights were not denied with respect to the opportunity to present witnesses or documentary evidence.[13]

Shabazz additionally requests "a declaratory judgment that defendants violated the United States Constitution and state law when they" retaliated against Shabazz for filing grievances, used racial slurs towards Shabazz, issued false disciplinary charges, constructively discharged Shabazz because of his race, found plaintiff guilty of the disciplinary charge without sufficient evidence, denied plaintiff the opportunity to call witnesses and produce documentary evidence at the hearing and improperly charged plaintiff for photocopying and then converted the money to their own use. (Docket Entry # 6, ¶ A). This list of violations essentially tracks the causes of action in the complaint.

First, the declaratory relief concerning the disciplinary hearing is, as previously stated, inappropriate. Second, either the jury or this court has found that defendants did not violate Shabazz' constitutional rights or his rights under state law with respect to the aforementioned allegations. Accordingly, Shabazz is not entitled to a declaration that his rights were violated. *See American Telephone & Telegraph Company v. IMR Capital Corporation*, 888 F.Supp. 221, 257 (D.Mass. 1995) (dismissing declaratory judgment count to the extent the plaintiff failed to state a claim of relief with respect to the underlying claims).

As an additional matter, on May 5, 1999, defendants filed a motion for reconsideration of this court's allowance of a motion for costs filed by Shabazz. (Docket Entry # 148). As a basis for reconsideration, defendants state the general principle that parties bear their own costs unless they are prevailing parties within the meaning of Rule 54(d), Fed.R.Civ.P. Defendants also erroneously contend that Shabazz paid a portion of the filing fee. (Docket Entry # 149). To the contrary, the court allowed Shabazz to proceed *in forma pauperis*.[14] (Docket Entry # 5).

Finally, without elaboration, defendants summarily state that they did not agree to pay Shabazz' out-of-pocket costs. (Docket Entry # 148). Again, contrary to defendants' assertion, they did agree to pay

13. The aforementioned allegations also "do not readily compare to the sort of threatening, intimidating, or coercive conduct that would be a violation of" the MCRA. *Longval v. Commissioner of Correction*, 404 Mass. 325, 535 N.E.2d 588, 593 (1989). Consequently, they do not merit a declaration that Shabazz' rights under state law, i.e., the MCRA, were violated.

14. As is the practice of the Clerk's Office, Shabazz was not required to pay a partial filing fee under the newly codified filing fee provision of the Prison Litigation Reform Act ("the PLRA"), 28 U.S.C. § 1915(b) ("section 1915(b)"), because he filed suit prior to the PLRA's enactment. This court previously determined and discussed the law applicable to determine retroactivity of other provisions of the PLRA (Docket Entry # 152, pp. 25–31) which need not be repeated. Because the filing fee provision for bringing a civil action in the district court is not retroactive, *see Buckins v. Prisoner Legal Services*, 1998 WL 46917 at * 2 (N.D.Cal. Jan.27, 1998); *Walls v. Angrum*, 1997 WL 91055 at * 1–2 (S.D.N.Y. March 3, 1997); *Rodgers v. Deboe*, 950 F.Supp. 1024, 1026 (S.D.Cal.1997), Shabazz was not required to pay a partial filing fee. This court expresses no opinion as to the applicability of section 1915(b) to any appeal Shabazz may file in the future. *See Hale v. Wood*, 943 F.Supp. 1135, 1136 (D.Minn.1996) (requiring the plaintiff who filed notice of appeal after PLRA's effective date to pay filing fees even though he filed suit in district court prior to effective date and was allowed to proceed *in forma pauperis* ).

Shabazz' out-of-pocket or actual costs and therefore must abide by their agreement. Nevertheless, upon further review of the actual or out-of-pocket costs requested by Shabazz, this court will reduce the award to eliminate the $60.00 "cost" of Shabazz' inconvenience and delay[15] and the $6.00 estimated cost for mailing the motion for costs and supporting papers.

In open court on January 25, 1999, defendants' counsel agreed to absorb Shabazz' costs of filing an opposition to defendants' motion for reconsideration (Docket Entry # 120) of this court's denial of their second motion to dismiss (Docket Entry # 79) with the expectation that such costs would be considerably less than $100. In other words, defendants' counsel agreed to pay Shabazz' actual or out-of-pocket costs to respond to the motion for reconsideration. Upon further questioning by this court, defendants' counsel stated that she would like to pay Shabazz' actual cost of filing the opposition which she surmised would consist of certified mailing costs. She then requested that this court only give Shabazz his out-of-pocket costs. Thereafter, this court allowed the motion to reconsider (Docket Entry # 120) the January 8, 1999 motion to dismiss (Docket Entry # 79) inasmuch as the qualified immunity defense is designed to protect defendants from the burden and expense of a trial.[16] The court note confirms that, "The defendants agree to pay the plaintiff's actual costs to respond to motion." (Docket Entry # 121).

On January 26, 1999, this court issued a Procedural Order advising Shabazz that he needed to respond to the arguments set forth in both the motion for reconsideration (Docket Entry # 120) and the motion to dismiss (Docket Entry # 79). (Docket Entry # 124). The Procedural Order also directed Shabazz to file a motion seeking an award of costs incurred in filing the opposition to the motion for reconsideration in light of defendants' agreement to pay Shabazz' actual or out-of-pocket costs. At that time, defendants did not object to this court's characterization of their January 25, 1999 agreement to absorb Shabazz' costs. The Procedural Order provided Shabazz with examples of such actual costs including the cost of certified mailing and photocopying cases and supporting documentation. (Docket Entry # 124).

On February 9, 1999, Shabazz filed the motion for costs seeking actual or out-of-pocket costs in the amount of $96.90. Defendants did not file an opposition to the motion. In addition to legitimate out-of-pocket or actual costs to prepare and file the opposition,[17] Shabazz sought the aforementioned $60.00 for "inconvenience and delay" and $6.00 estimated cost for mailing the motion for costs and supporting papers. On March 18, 1999, after expiration of the 14 day period to file an opposition, this court allowed the motion for costs because of defendants' agreement to pay actual or out-of-pocket costs and defendants' failure to file an opposition. Seven weeks later, defendants filed the motion for reconsideration (Docket Entry # 148) which Shabazz opposes (Docket Entry 151).[18]

---

**15.** Shabazz calculated this $60.00 cost by noting that the institutional pay for a kitchen clerk is $5.00 per day. Because he worked 12 days to prepare the opposition to the motion for reconsideration, Shabazz sought $60.00 as part of his actual or out-of-pocket costs.

**16.** Initially, trial was set to commence on October 26, 1998. Defendants, however, moved for a continuance on October 7, 1998. (Docket Entry # 63). By endorsement, this court allowed the motion and reset the trial date for January 25, 1999, with the endorse-

ment, *"No* further continuances to be granted."

**17.** Such costs consisted of $23.40 certified mailing costs, $2.50 photocopying costs and $6.00 to obtain an updated copy of the docket sheet in order to prepare the opposition.

**18.** This is not the first instance where defendants belatedly seek reconsideration of a motion which, initially, they did not oppose. On March 26, 1998, this court allowed Shabazz' motion to compel due to the absence of an opposition. On April 6, 1998, defendants

This court has the inherent power to reconsider its own interlocutory order. This inherent power is not governed by rule or statute and is rooted in the court's equitable power to "process litigation to a just and equitable conclusion." *In Re Villa Marina Yacht Harbor, Inc.,* 984 F.2d 546, 548 (1st Cir.), *cert. denied,* 510 U.S. 818, 114 S.Ct. 71, 126 L.Ed.2d 40 (1993); *see also Greene v. Union Mutual Life Insurance Company of America,* 764 F.2d 19, 22 (1st Cir.1985). Ordinarily, when faced with a motion to reconsider, the court applies an interest of justice analysis. *United States v. Roberts,* 978 F.2d 17, 21 (1st Cir.1992).

In conducting this analysis, this court may consider the following, noninclusive list of factors:

(1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying the tardiness, (4) the character of the omission, (5) the existence *vel non* of cognizable prejudice to the nonmovant in consequence of the omission, (6) the effect of granting (or denying) the motion on the administration of justice, and (7) whether the belated filing would, in any event, be more than an empty exercise.

*Winters v. FDIC,* 812 F.Supp. 1, 3 (D.Me. 1992) (quoting *United States v. Roberts,* 978 F.2d at 21–22). While this court hesitates to allow reconsideration in light of defendants' repeated pattern of seeking reconsideration in lieu of making timely arguments [19] and their failure to offer an explanation for the delay, the interests of justice favor re-examining the requested out-of-pocket costs sought by Shabazz inasmuch as he sought costs not encompassed within the parties' agreement. As noted above, defendants agreed to pay Shabazz' out-of-pocket or actual costs. Such costs do not, however, include a $60.00 fee for Shabazz' inconvenience and

delay. Nor do they include an estimated $6.00 certified mailing cost for mailing the motion for costs and supporting papers. It would be manifestly unjust to require defendants to pay costs outside the parameters of their agreement. The remaining costs, however, involve legitimate out-of-pocket or actual costs related to preparing an opposition to the motion for reconsideration. As such, they are appropriate. Having considered the remaining factors, the March 18, 1999 Order is modified in the interests of justice to the extent that defendants are directed to pay Shabazz his actual or out-of-pocket costs in the amount of $31.90 forthwith.[20]

As a final matter, on August 18, 1999, Shabazz filed a motion for a free trial transcript. (Docket Entry #189). He submits that he needs an entire transcript of the trial to determine any appealable issues. He fails to identify or elaborate upon the nature of such issues. He also contends that he is indigent and allowance of the motion is in the interest of justice.

As previously noted, Shabazz is proceeding *pro se* and *in forma pauperis.* Section 1915(c) does not apply inasmuch as the parties are not proceeding under 28 U.S.C. § 636(b) or before an appellate court. *See O'Neal v. County of Nassau,* 992 F.Supp. 524, 535 (E.D.N.Y.1997), *aff'd,* 133 F.3d 907, 1998 WL 29836 (2d Cir.1998). Although not cited by Shabazz, 28 U.S.C. § 753(f) ("section 753(f)") provides that, "Fees for transcripts furnished . . . to persons permitted to appeal *in forma pauperis* shall . . . be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." Section 753(f) "contemplates that the appeal already has been certified *in forma pauperis* and authorizes determination at that point of whether a free trial transcript is war-

---

filed a motion for reconsideration of the allowance. (Docket Entry #27).

**19.** This court summarized a number of defendants' belated filings in open court on January 25, 1999.

**20.** The $31.90 figure consists of $23.40 for certified mailing, $2.50 for photocopying and $6.00 for an updated docket sheet.

ranted on the ground that 'the appeal is not frivolous (but presents a substantial question).' " *Linden v. Harper & Row, Inc.,* 467 F.Supp. 556, 558 (S.D.N.Y.1979); *accord Nolt v. Strausser,* 761 F.Supp. 18, 19 (E.D.Pa.1990) (eligibility for transcript under section 753(f) "is predicated upon the appellant proceeding *in forma pauperis* " and receiving certification that the appeal is not frivolous). A "substantial question" under section 753(f) is defined as one which is "reasonably debatable" based on an objective standard. *Philippeaux v. North Central Bronx Hospital,* 1996 WL 167732 at * 1 (S.D.N.Y. April 10, 1996) (quoting *Harlem River Consumers, Cooperative, Inc. v. Associated Grocers of Harlem, Inc.,* 71 F.R.D. 93, 97 (S.D.N.Y.1976)); *Handley v. Union Carbide Corporation,* 622 F.Supp. 1065, 1067 (S.D.W.Va.1985), *aff'd,* 804 F.2d 265 (4th Cir.1986). In addition, "the plaintiff must demonstrate that the requested trial transcript is required for proper appellate review." *Nolt v. Strausser,* 761 F.Supp. at 19.

In the case at bar, Shabazz' request is premature. While Rule 24(a)(3), Fed. R.App. P., states that, "A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization," Shabazz fails to articulate the grounds for the appeal, *see O'Neal v. County of Nassau,* 992 F.Supp. at 536 (denying request for trial transcript where the plaintiff failed to specify the grounds for appeal), and/or state such grounds with sufficient specificity to allow this court to assess the need and relevance for the trial transcript. *See Philippeaux v. North Central Bronx Hospital,* 1996 WL 167732 at * 2 (S.D.N.Y. April 10, 1996). At this stage, this court cannot adequately determine whether any "appeal is not frivolous (but presents a substantial question)." 28 U.S.C. § 753(f).

## CONCLUSION

For the foregoing reasons, Shabazz is not entitled to a declaratory judgment or to relief under the fifth or sixth causes of action. The motion for reconsideration (Docket Entry # 148) is **ALLOWED** to the extent that the award of costs is reduced to $31.90. The motion for a trial transcript (Docket Entry # 189) is **DENIED** without prejudice at this time subject to a more sufficient showing of Shabazz' entitlement to a transcript under section 753(f). A final judgment shall issue in accordance with the June 25, 1999 opinion, the jury's special verdict and this opinion.