KEVIN MURPHY & another[1] vs. SUPERINTENDENT,
MASSACHUSETTS CORRECTIONAL INSTITUTION, CEDAR
JUNCTION, & others.[2]

Norfolk.    November 7, 1985. — March 3, 1986.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Imprisonment. Due Process of Law,* Prison disciplinary proceeding. *Constitutional Law,* Confrontation of witnesses, Self-incrimination. *Administrative Law,* Substantial evidence, Prison disciplinary proceeding.

Article 12 of the Massachusetts Declaration of Rights does not grant an
    inmate subject to prison disciplinary proceedings a constitutional right
    to confront inmate informants whose information appears to have pro-
    vided the factual basis for the charges. [831-832]
Where the reporting officer in prison disciplinary proceedings against two
    inmates testified as to specific factual information he had received from
    informants, where there was evidence respecting the reliability and cred-
    ibility of this information, and where the hearsay evidence was uncon-
    tradicted on the record, it was held that the disciplinary board's decision
    against each inmate was supported by substantial evidence. [833-834]

CIVIL ACTION commenced in the Superior Court Department
on September 17, 1981.

The case was heard by *Hiller B. Zobel,* J., on motions for
summary judgment.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*David C. Casey* for the plaintiffs.
*Freda K. Fishman* for the defendants.

WILKINS, J. The plaintiffs, inmates at the Massachusetts
Correctional Institution at Cedar Junction at the time they filed
their complaint, appeal from a summary judgment in favor of
the defendants. The motion judge rejected the inmates' chal-

---

[1] Alfred L. Shepard.

[2] The chairman of the disciplinary board and the Commissioner of Correc-
tion.

lenge to disciplinary board decisions that resulted in their loss of days of good-time credit against their sentences. The plaintiffs were charged in nearly identical disciplinary reports with killing another inmate at M.C.I., Norfolk. The correction officer who filed the reports relied on information provided him by inmate informants.[3] The identity of the informants was disclosed neither in the reports nor in the course of the disciplinary hearings held on the charges against each inmate. The disciplinary board found both inmates guilty. Murphy forfeited 150 days of good-time credit against his sentence. Shepard lost 130 days.

We transferred the inmates' appeal to this court. We affirm the judgment for the defendants.

1. The inmates argue that, in disciplinary proceedings based largely on statements made to the reporting officer by informants, the confrontation clause of art. 12 of the Massachusetts Declaration of Rights guarantees inmates the right to face and cross-examine the informants before good-time credits may be revoked. They assert that no person "shall be held to answer for any crimes or offence" unless given the opportunity to meet

---

[3] Each report, which the correction officer testified was based on information from two reliable informants (although the report reads as if there had been only one informant), sets forth the following facts in description of the offense: "At approximately 9:00 A.M. on 5/10/80 an informant told me that while playing cards on the first floor of Unit 4-1 on 5/4/80 he heard yelling and banging going on, on the second floor. The time was about 9:00 P.M. Around 9:05 P.M., the same evening, the card game broke up and the informant went to the second floor where he lives. The informant saw inmates Kevin Murphy and Alfred Sheppard standing in front of Ronald Bonner's Room 2-12. Murphy and Sheppard were yelling at Bonner. Sheppard then left, went into a room and came out with a weapon (table leg) and then Sheppard and Murphy entered Bonner's room. The informant heard banging coming from Bonner's room. A couple minutes later the informant saw Murphy and Sheppard leaving Bonner's room. Murphy was holding the weapon at this point. At this point in time, the informant went up to the third floor to see an inmate and told him that something was going on, on the second floor. After several minutes everything seemed to quiet down and the informant went back to the second floor. As a direct result of this assault, inmate Ronald Bonner died on May 12, 1980 while at Peter Bent Brigham Hosp. The actual date of the issuing of this D-Report is based upon an on-going investigation."

The record indicates that Shepard signs his name with one "p."

the witnesses against him face to face.[4] They recognize that the confrontation clause of the Sixth Amendment, applicable through the Fourteenth Amendment, does not aid them here. See *Wolff* v. *McDonnell,* 418 U.S. 539 (1974). They underline the fact that, unlike the Sixth Amendment, art. 12 refers to an "offence" in addition to "crimes."

Article 12 does not grant an inmate subject to prison disciplinary proceedings a constitutional right to confront inmate informants whose information appears to have provided the factual basis for the charges. We regard the difference in wording between art. 12 and the Sixth Amendment to be insignificant in these circumstances. The principle underlying each provision is the same. Prison disciplinary proceedings do not involve all the constitutional principles applicable to criminal proceedings, such as proof beyond a reasonable doubt and the right to trial by jury. The need for fairness in disciplinary proceedings must be accommodated to the interest of maintaining prison security. *Wolff* v. *McDonnell, supra* at 566-567. *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole,* 390 Mass. 409, 416 (1983). Although we recognize that changed circumstances may call for new constitutional principles, that we are not bound in this matter by the Supreme Court's interpretation of the Sixth Amendment, and that this court might not be as willing as it once was to resolve an issue simply by labeling a proceeding "civil" rather than "criminal" (see *Commonwealth* v. *McGruder,* 348 Mass. 712, 716 [1965] [sexually dangerous person commitment proceedings]; *Frost's Case,* 127 Mass. 550, 554 [1879] [arrest on warrant on execution for debt]), we find unjustified the inmates' claim under the Massachusetts Constitution to an absolute right to confront prison informants in prison disciplinary proceedings.

---

[4] The applicable language of art. 12 is as follows: "No subject shall be held to answer for any crimes or offence, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse, or furnish evidence against himself. And every subject shall have a right to produce all proofs, that may be favorable to him; to meet the witnesses against him face to face, and to be fully heard in his defence by himself, or his counsel, at his election.

2. Although we reject the inmates' construction of the confrontation clause of art. 12, we do acknowledge that concepts of due process of law expressed in art. 12 are applicable to prison disciplinary proceedings. See *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 380 n.4 (1983) (leaving open the question whether the court "would interpret our Declaration of Rights to provide greater due process rights for prison disciplinary hearings than those minimal requirements mandated by the United States Constitution"). In our *Nelson* opinion (*id.* at 394-395), we discussed criteria required as a matter of Federal due process for the use of hearsay information from informants in prison disciplinary proceedings. See also *Lamoureux* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 414-415. No claim is made here that those criteria for reliability and credibility were not met. We conclude that the inmates' State due process challenges are adequately met if the record contains substantial evidence to support the prison disciplinary board's decisions.

3. We consider, therefore, the inmates' claim that the evidence did not support the disciplinary board's conclusions. We treat this as an action in the nature of certiorari pursuant to G. L. c. 249, § 4 (1984 ed.), even though the complaint speaks in terms of an action for declaratory and injunctive relief. See *Hill* v. *Superintendent, Mass. Correctional Inst., Walpole,* 392 Mass. 198, 199 nn.2 & 3 (1984), rev'd on other grounds, 472 U.S. 445 (1985); *Wightman* v. *Superintendent, Mass. Correctional Inst., Walpole,* 19 Mass. App. Ct. 442, 444 (1985). Where inmates challenge the sufficiency of the evidence to justify a disciplinary board's decision, we apply the substantial evidence test, the standard stated in the department's regulations. 103 Code Mass. Regs. § 430.13 (3) (1978) ("evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs"). See *Wightman* v. *Superintendent, Mass. Correctional Inst., Walpole, supra* at 445. Cf. G. L. c. 30A, § 11 (2) (1984 ed.) (using the same words). Compare G. L. c. 30A, § 1 (6) (1984 ed.) (defining "substantial evidence" as evidence "a reasonable mind might accept as adequate to support a conclusion").

The inmates complain that all the evidence against them was hearsay and assert that hearsay alone can never constitute substantial evidence. Under the State Administrative Procedure Act (G. L. c. 30A), this court has left that question undecided. See *Augustine* v. *Director of the Div. of Employment Sec.*, 392 Mass. 1007, 1008 (1984). Obviously, in some instances hearsay standing alone in support of a conclusion may not be substantial evidence, especially when it is contradicted by more reliable evidence. *Goodridge* v. *Director of the Div. of Employment Sec.*, 375 Mass. 434, 437 & n.2 (1978). On the other hand, hearsay evidence, especially if (as here) it is uncontradicted on the record, may well be sufficiently reliable to support a conclusion.

Considering the testimony of the reporting officer as to specific factual information he received from the informants, together with the other indicia of reliability and credibility that such hearsay must meet (*Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 394-395 [1983]), we conclude that there was substantial evidence before the disciplinary board in each proceeding to support its decision that each inmate committed the offense charged. In other circumstances, reliance on the same kind of hearsay evidence might be unreasonable because other relevant evidence is (or might on investigation be shown to be) available.

4. Other arguments of the inmates can be disposed of briefly. (a) There was no constitutional violation in holding the disciplinary proceedings while the district attorney was investigating the crime, even though as a result each inmate chose not to testify. See *Baxter* v. *Palmigiano,* 425 U.S. 308 (1976). The inmates' silence was not used against them. (b) Each record, in compliance with 103 Code Mass. Regs. § 430.15 (1) (1978), adequately shows why the disciplinary board could not properly have produced the informants or disclosed certain information concerning them. This disclosure on the record exceeds Federal due process requirements. *Ponte* v. *Real,* 471 U.S. 491, 496 (1985). In fact, neither inmate requested that the informants be produced or that reasons be given for not producing them. We do think it is important that, if requested, the

board explain on the administrative record why it has suppressed evidence that may tend to impeach an informant's credibility. Such an explanation should be as specific as is reasonably possible based on the circumstances of each case. (c) Neither inmate was denied the right to call witnesses on his behalf. Murphy made no such request. Shepard requested that the reporting officer be present, and he was.

*Judgment affirmed.*