ROMAN GONZALEZ & OTHERS[1] vs. COMMISSIONER OF
CORRECTION & others.[2]

Middlesex. January 10, 1990. - May 17, 1990.

Present: LIACOS, C.J., NOLAN, LYNCH, & O'CONNOR, JJ.

*Moot Question. Practice, Civil*, Moot case, Class action. *Imprisonment*, Urinalysis drug testing. *Administrative Law*, Substantial evidence, Prison disciplinary proceeding.

Where at the time of the certification of a proceeding as a class action on behalf of present and future inmates at the Massachusetts Correctional Institution at Shirley the named plaintiffs were no longer members of the class they sought to represent, certification of the class was inappropriate. [451-453]

A proceeding challenging the constitutionality of a urinalysis drug-testing program at the Massachusetts Correctional Institution at Shirley was remanded for a determination whether an appropriate plaintiff class exists, and for further proceedings. [453-454]

CIVIL ACTION commenced in the Superior Court Department on September 15, 1987.

The case was heard by *Hiller B. Zobel*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sandra L. Hautanen*, Assistant Attorney General, for the Commissioner of Correction & others.

---

[1]Roman Gonzalez and Floyd Piner brought this action on their own behalf and allegedly on behalf of all other inmates at the Massachusetts Correctional Institution at Shirley. A judge of the Superior Court certified the class and expanded it to include all present and future prison inmates under the supervision of the Massachusetts Department of Correction. The propriety of that certification is challenged in this appeal.

[2]Superintendent of the Massachusetts Correctional Institution at Shirley, and the associate deputy for security at the Massachusetts Correctional Institution at Shirley.

*Ralph F. Boyd, Jr.* (*Geoffrey C. Cook* with him) for the plaintiffs.

O'CONNOR, J. Roman Gonzalez and Floyd Piner commenced this action in the Superior Court in September, 1987. Their complaint, which characterized the action as a class action on behalf of all inmates at the Massachusetts Correctional Institution at Shirley (M.C.I. Shirley), challenged the Federal and State constitutionality of the urinalysis drug-testing program at that facility. When the action was filed, Gonzalez and Piner were incarcerated at M.C.I. Shirley. On April 11, 1988, Piner was transferred to a different facility, and on December 12, 1988, he was released from custody. Gonzalez was released on April 14, 1988.

On August 17, 1988, Gonzalez filed a "Motion to Certify Expanded Class" to include in the class all present and future inmates under the supervision of the Department of Correction.[3] The defendants responded with a "Motion to Dismiss and Opposition to Class Certification and Expansion," based on mootness and lack of jurisdiction under Mass. R. Civ. P. 12 (b), 365 Mass. 754 (1974). The defendants alleged that the case was moot because, due to their transfer or release from M.C.I. Shirley before a class certification hearing had been held, the plaintiffs lacked standing and therefore there was no "live" controversy before the court. No explicit action was ever taken on the motion to dismiss. No contention is made that the motion was waived.

A hearing was held on October 6, 1988, at which the judge informed counsel that he wanted materials submitted relative to the "state-of-the-art" procedures in current use for urinalysis drug testing as such materials might bear on the "substantial evidence" standard applicable to inmate disciplinary proceedings. See *Murphy* v. *Superintendent, Mass.*

---

[3]According to the docket, counsel was appointed for Gonzalez in April, 1988. The docket does not show an appointment of counsel for Piner. The record and the briefs suggest an understanding on the parts of the judge and counsel for Gonzalez that Gonzalez's counsel was also counsel for Piner. Nothing turns on whether Gonzalez's counsel also represented Piner. We shall assume that he did and still does represent Piner.

*Correctional Inst., Cedar Junction*, 396 Mass. 830, 833 (1986). In early February, 1989, in response to the judge's order, the parties submitted memoranda of law, affidavits, and other materials concerning the reliability of various urinalysis drug-testing methods. After a hearing relative to the materials submitted, the plaintiffs filed a motion for summary judgment, and the defendants filed an opposition to it.

In May, 1989, without expressly referring to the summary judgment motion, the judge issued a "Memorandum of Decision and Order." He ruled that "Plaintiffs are proper representative parties and the matter is not moot — indeed, the question of drug testing in correctional institutions is so significant as virtually to compel a kind of judicial notice of its importance. Whatever legal or constitutional imperatives pertain to inmate drug testing do and should apply to *any* inmate in *any* Department of Correction institution. Thus this case, whatever the immediate status of the present plaintiffs, presents vital issues, capable of repetition, yet evading review, *Wolf* v. *Commissioner of Public Welfare*, 367 Mass. 293, 298 (1975). It is appropriate, under those circumstances, to relate the class certification back in time to the commencement of this action, see *United States Parole Commission* v. *Geraghty*, 445 U.S. 388, 397-399 (1980); *Gerstein* v. *Pugh*, 420 U.S. 103, 110-111 [n.11] (1975)" (emphasis in original).

In his memorandum, the judge also set forth his substantive conclusion as follows: "[T]he enzyme multiplied immune test ('EMIT') is not legally sufficient to furnish the 'substantial evidence' of substance use required in Massachusetts for corrections inmate disciplinary proceedings, *Murphy* v. *Superintendent, Mass. Correctional Institution, Cedar Junction*, 396 Mass. 830, 833 (1986). . . . GC/MS [gas chromatography/mass spectrometry] screens to an accuracy of 99% . . . . EMIT, on the other hand, requires separate confirmation to preclude false positives. The legal question is simply: Has the Commonwealth established, by a preponderance of the evidence, that the scientists in the field to which EMIT pertains have generally accepted as reliable the use of the

double-EMIT to confirm an initial positive result. See *Commonwealth* v. *Lykus*, 361 Mass. 191, 196 (1975); *Kane* v. *Fair*, Super. Ct. Norfolk No. 136229, Findings of Fact, Conclusions of Law, and Order 4-5 (August 5, 1983). The preponderance of the materials submitted to this Court, including (perhaps especially) those which Defendants introduced, establish firmly the very opposite of the proposition which the government must establish. This Court therefore stands unpersuaded that double-EMIT is any more reliable for the identification of substance positives than was the single-EMIT procedure condemned in *Kane* v. *Fair, supra.* Double-EMIT's lack of general acceptance debars it as 'substantial evidence.' "[4]

A "Judgment and Order" followed, generally providing that test results from the Department of Correction inmate drug testing program may be used in evidence in inmate disciplinary hearings only if the test methodology meets the requirements described in the judge's memorandum of decision and order. Among other requirements, the judgment and order specified: "All initial positives shall be confirmed by gas chromatography/mass spectrometry ('GC/MS') techniques at the cut-off levels specified in the HHS [Department of Health and Human Services] Guidelines, as amended from time to time." The defendants appealed from the memorandum of decision and order and from the judgment and order. We transferred the case from the Appeals Court on our own initiative. We reverse and remand to the Superior Court.

The general rule concerning mootness and class actions is that a litigant must be a member of the class he or she seeks to represent at the time the trial court certifies the class. *Sosna* v. *Iowa*, 419 U.S. 393, 403 (1975). *Inmates of the Lincoln Intake & Detention Facility* v. *Boosalis*, 705 F.2d 1021, 1023 (8th Cir. 1983). *VunCannon* v. *Breed*, 565 F.2d 1096, 1098-1101 & nn. 4-6 (9th Cir. 1977). 7 J.W. Smith & H.B. Zobel, Rules Practice § 23.6, at 16 (1975 & Supp.

---

[4]The judge below also presided in Kane *vs.* Fair, Superior Ct. Norfolk No. 136229 (August 5, 1983).

1990). Among other things, the general rule recognizes that a named plaintiff who no longer has a personal stake in the outcome of the litigation may not be motivated to represent adequately those persons in whose behalf the action was assertedly brought. See *Wolf* v. *Commissioner of Pub. Welfare, supra* at 298. In this case, when Gonzalez filed his motion for certification and class expansion, he and Piner were not members of the class they initially sought to represent and had not been members for four months. More importantly, as of May 31, 1989, the date of certification, Gonzalez and Piner had both been released from the Department of Correction's custody, and thus had not been members of the expanded class for several months. As a result, despite the importance of the underlying claims and the very considerable time and effort expended by counsel, certification of the class with Gonzalez and Piner as named plaintiffs was inappropriate.

There are occasions when a judge may be justified in certifying a class despite the mootness of the named representative's claims. An example would be a case involving named plaintiffs or party members whose claims are likely to recur but are so transient by their very nature they are likely to become moot before a court reasonably can rule on a certification motion ("capable of repetition, yet evading review"). See *Gerstein* v. *Pugh*, 420 U.S. 103, 110-111 n.11 (1975); *Lockhart* v. *Attorney Gen.*, 390 Mass. 780, 783 (1984). Another example would be a defendant's voluntary cessation of allegedly wrongful conduct toward the named plaintiff, thereby mooting his or her claim. See *Wolf* v. *Commissioner of Pub. Welfare, supra* at 298-300.

Neither of these examples, nor a comparable situation, obtains here. Surely, there are numerous persons in the class sought to be certified in this case whose incarceration will extend beyond the time when a judge reasonably may rule on certification. See *M.C.* v. *Commissioner of Correction*, 399 Mass. 909, 911 (1987); *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 708 (1976). This is true even if, as the plaintiffs point out, the Massachusetts class action rule, Mass. R.

Civ. P. 23, 365 Mass. 767 (1974), may be "more conducive than its Federal counterpart to vagueness in class definition by having omitted the portions of the Federal rule that call for certification of a class action as soon as practicable after commencement of the action." *Cleary* v. *Commissioner of Pub. Welfare,* 21 Mass. App. Ct. 140, 148 n.14 (1985). See *Massachusetts Gen. Hosp.* v. *Rate Setting Comm'n,* 371 Mass. 705, 713 (1977). See also Fed. R. Civ. P. 23 (1989). Also, this is not a case like *Wolf, supra,* in which the defendant's voluntary cessation of assertedly wrongful conduct mooted a claim. Finally, we see no other reason to permit this case to proceed. See *Lockhart* v. *Attorney Gen.,* 390 Mass. 780, 783-784 (1984) (listing situations in which this court would decide moot cases).

Because Gonzalez and Piner are not appropriate class representatives, we vacate the class certification as well as the substantive determinations set forth in the judge's memorandum of decision and order. Nonetheless, rather than dismissing the case in accordance with the defendants' motion to dismiss, we think the better course is to remand the case to the Superior Court. If no appropriate person seeks to be admitted as a plaintiff class representative within thirty days after this decision, the case is to be dismissed. If an inmate does come forward within that time, the certification question may be addressed and, if indicated, the case may proceed in due course. A similar procedure has been approved by other courts and commentators. See, e.g., *Harris* v. *Peabody,* 611 F.2d 543, 544 (5th Cir.), cert. denied sub nom. *Harris* v. *Adams,* 449 U.S. 958 (1980); *Goodman* v. *Schlesinger,* 584 F.2d 1325, 1332-1333 (4th Cir. 1978). See generally 13A C.A. Wright, A.R. Miller, & E.H. Cooper, Federal Practice and Procedure § 3533.9, at 417-423 (1984).

If the case proceeds, the parties and the judge should address in depth the question whether the rule articulated in *Frye* v. *United States,* 293 F. 1013, 1014 (D.C. Cir. 1923), and applied in numerous cases in this Commonwealth, see, e.g., *Commonwealth* v. *Mendes,* 406 Mass. 201 (1989); *Commonwealth* v. *Kater,* 388 Mass. 519 (1983), *S.C.,* 394

Mass. 531 (1984); *Commonwealth* v. *Lykus,* 367 Mass. 191 (1975), *S.C.,* 406 Mass. 135 (1989), bearing on the admissibility at trial of scientific test results, should also obtain in Department of Correction disciplinary proceedings. An appropriate inquiry would be whether, even though the testing procedure followed by the department has not been generally accepted by the appropriate scientific community as reliable, such positive test results may nevertheless be supported by sufficient evidence of their reliability that they meet the "substantial evidence" standard applicable to decisions of a prison disciplinary board. See *Murphy* v. *Superintendent, Mass. Correctional Inst., Cedar Junction,* 396 Mass. 830, 833 (1986). See also 103 Code Mass. Regs. § 430.06 (1987) ("evidence on which reasonable persons are accustomed to rely in the conduct of serious affairs" constitutes substantial evidence). Depending on the answer to that question, it may be appropriate to revisit the question, addressed by the judge below, whether "scientists in the field to which EMIT pertains have generally accepted as reliable the use of the double-EMIT to confirm an initial positive result." In view of our vacating the class certification, that question is still open.

This case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*