Milkey, J.
The plaintiffs are inmates at various State prison facilities who for a time had been held in segregated confinement in so-called “special management units” (SMUs).[3] They brought *630 this action seeking declaratory and injunctive relief against the Commissioner and other officials of the Department of Correction (collectively, the DOC). The plaintiffs’ amended complaint alleged that they, and other inmates similarly situated, cannot be segregated in SMUs without being afforded certain substantive and procedural protections. Their claims were identical to ones raised by the inmate in LaChance v. Commissioner of Correction, 463 Mass. 767, 774-777 (2012).[4] Thus, for example, like that inmate, the plaintiffs claimed inter alia that the conditions they faced in the SMUs were as onerous as those faced in so-called “departmental segregation units” (DSUs),[5] and that therefore the DOC was bound to extend to them the benefit of existing regulations governing confinement in the DSUs. Once the Supreme Judicial Court issued its opinion in LaChance, a Superior Court judge dismissed this action without prejudice to the plaintiffs’ filing a new complaint alleging “that [the] DOC is failing to properly comply with LaChance.”[6] For the reasons set forth below, we dismiss this appeal from the judgment as moot.
Framing the mootness question. As an initial matter, we note that it is uncontested that the plaintiffs are no longer held in segregated confinement in SMUs.[7] Accordingly, to the extent that their case seeks to assert their own rights, it is moot. See Littles v. Commissioner of Correction, 444 Mass. 871, 872 n.3 (2005). However, a moot case nevertheless can be heard if it presents an issue “of public importance, capable of repetition, yet evading review.” Superintendent of Worcester State Hosp. v. Hagberg, 374 Mass. 271, 274 (1978).[8] As the dissent accurately points out, this long-recognized exception to the mootness doctrine has par *631 ticular application to litigation involving inmate rights given the often ephemeral nature of the alleged improprieties being challenged. See, e.g., Commissioner of Correction v. Myers, 379 Mass. 255, 260-261 (1979); Abdul-Alazim v. Superintendent, Mass. Correctional Inst., Cedar Junction, 56 Mass. App. Ct. 449, 452 n.6 (2002). However, whether an appellate court should proceed to address an appeal that has become moot remains a matter of discretion. Lockhart v. Attorney Gen., 390 Mass. 780, 782-783 (1984). See Blake v. Massachusetts Parole Bd., 369 Mass. 701, 708 (1976). As explained below, in the wake of LaChance and the pending regulatory proceeding that LaChance spawned, we conclude that addressing the underlying substantive issues that the plaintiffs seek to raise would be improvident at this time.
The LaChance ruling. In LaChance, a Superior Court judge ruled on summary judgment that prison officials had violated an inmate’s Federal and State due process rights by holding him in an SMU for over ten months without a hearing in which he could seek to challenge his segregated confinement. 463 Mass, at 772-773. With regard to the inmate’s claims for monetary damages pursuant to 42 U.S.C. § 1983 against the officials in their individual capacities, the judge ruled that the officials were not entitled to qualified immunity, because — in the judge’s view — the inmate’s due process rights clearly had been established by existing precedent. LaChance, supra at 773. On the officials’ interlocutory appeal of the denial of their motion to dismiss the § 1983 claims, id. at 768 & n.3, the Supreme Judicial Court held that the officials were entitled to qualified immunity, id. at 777-778.
At the same time, the LaChance court affirmed the judge’s ruling that the officials had violated the inmate’s due process rights. In the key paragraph, the court stated as follows:
“We conclude that an inmate confined to administrative seg *632 regation on awaiting action status, whether such confinement occurs in an area designated as an SMU, a DSU, or otherwise, is entitled, as a matter of due process, to notice of the basis on which he is so detained; a hearing at which he may contest the asserted rationale for his confinement; and a posthearing written notice explaining the reviewing authority’s classification decision. The appropriate time frame for such actions must balance the inmate’s interest — to challenge potentially arbitrary detention in severe conditions — with that of prison officials — to secure the reclassification or transfer of an inmate who poses a threat to himself, to fellow inmates, or to the security of the facility. Although we leave it to the DOC to promulgate regulations that reflect the balance of these interests, we conclude that in no circumstances may an inmate be held in segregated confinement on awaiting action status for longer than ninety days without a hearing.”
LaChance, 463 Mass, at 776-777. Thus, while broadly sketching out the due process rights that the DOC had to provide to inmates who were held in an SMU on “awaiting action” status, the court otherwise left it to the DOC to promulgate new regulations to balance the competing interests at stake. The court took that approach even though it recognized that “the conditions of La-Chance’s confinement in the SMU were, as the judge found, essentially equivalent to those in the system’s designated DSUs, and in some respects even more restrictive.” Id. at 774.
The import of LaChance for this case. The LaChance court made clear that its holding was not limited to the inmate in that case but instead applied to all “inmate[s] confined to administrative segregation on awaiting action status.” Id. at 776. Consequently, the DOC recognizes that, going forward, it is bound to provide all such inmates the due process rights recognized in LaChance,[9] In a January, 2013, status report requested by the motion judge, the DOC reported that it had begun the process of promulgating the new regulations required by LaChance, and that it would commence providing hearings to inmates confined in an SMU even before the new regulations were finalized.
*633 The plaintiffs argue that LaChance itself did not fully resolve the legal issues they raised in their amended complaint and that the completion of the pending regulatory process will not address the issues that remain open. Specifically, the plaintiffs contend that because the conditions of segregated confinement in an SMU are equivalent to those in a DSU,[10] then — regardless of what the new regulations mandated by LaChance ultimately will say — DOC is bound to apply its existing DSU regulations to all inmates segregated in an SMU for more than a brief period (including those held on awaiting action status).* [11] They acknowledge that LaChance implicitly forecloses a claim that Federal due process requires that result. However, relying on Haverty v. Commissioner of Correction, 437 Mass. 737 (2002), and other cases cited with approval in LaChance, 463 Mass, at 774-775, the plaintiffs claim that full compliance with the DSU regulations is independently required either by the State Constitution or by the regulations themselves.[12] The plaintiffs additionally maintain that a two-decade old injunction issued by a single justice of the Su *634 preme Judicial Court prohibits the DOC from amending the DSU regulations to make them less protective. See Haverty, supra at 758 & n.26 (referencing the injunction). Therefore, according to the plaintiffs, the judge could not dismiss their case based on LaChance. Instead, they contend, she first should have allowed them to put on their proof that the conditions of SMU confinement are as restrictive as those in the DSUs, and ultimately should have entered judgment requiring the DOC to comply with its DSU regulations as to all inmates held in segregated confinement in SMUs (including those on awaiting action status).
The DOC counters that even if older case law could be read along the lines that the plaintiffs suggest,[13] LaChance marks an implicit departure from that precedent. According to the DOC, it would make no sense for the Supreme Judicial Court to have directed it to go through the process of promulgating a new set of regulations if case law already made it clear that the agency was bound to apply its existing DSU regulations.[14] With regard to the plaintiffs’ claim that the single justice’s 1995 injunction continues to limit its ability to modify its regulations, the DOC notes that the full court directed it to issue the new regulations while providing guidance on what due process minimally requires. The DOC also highlights that there is no lawful basis for a court to prohibit it from amending its regulations as it deems appropriate, except to the extent that the agency is constrained by statutory or constitutional limitations. See Judge Rotenberg Educ. Center, Inc. v. Commissioner of the Dept. of Mental Retardation (No. 1), 424 Mass. 430, 466 (1997) (“[T]he judiciary lacks the authority to order a State agency to do anything that it is not required to do *635 as a matter of law”), citing Attorney Gen. v. Sheriff of Suffolk County, 394 Mass. 624, 629-630 (1985).
As this debate between the parties suggests, there is some unresolved tension in the case law. The question is whether we should try to resolve that tension at this time in the current litigation — now moot as to all named plaintiffs — under the circumstances presented. We conclude that it would be improvident to do so. Although LaChance may not directly have resolved all the issues the plaintiffs seek to raise, it set in motion a regulatory process that will help frame any unresolved questions. Once the regulations mandated by LaChance have been issued and applied, any remaining claims about what additional process is due, if any, properly can be assessed based on “concrete fact situation[s].” Entergy Nuclear Generation Co. v. Department of Envtl. Protection, 459 Mass. 319, 326 (2011), quoting from Hadley v. Amherst, 372 Mass. 46, 52 (1977). In that manner, judicial review can take place in a far more appropriate setting than the abstract one presented by what remains of the current case. See Hadley, 372 Mass, at 52 (noting that “[i]n the absence of a concrete fact situation, any ruling as to the extent of the power granted [to a governmental entity by the relevant statute] is likely to be either too narrow or too broad”). In this regard, we note that an inmate’s assignment to an SMU can occur in a broad array of circumstances, and the specific process that an inmate may be due may vary somewhat with those particular circumstances. Deferring consideration of the questions the plaintiffs seek to raise until the DOC has drafted and begun to apply its regulations will help allow informed review of such considerations. Although courts eventually may need to address the issues the plaintiffs seek to raise (assuming they are unsatisfied by the forthcoming regulations), consideration of such issues now would be premature. See Massachusetts Med. Soc. v. Commissioner of Ins., 402 Mass. 44, 48-49 (1988) (“The better policy is to allow the administrative process to run its course before permitting appellate review, thereby granting the administrative agency a sufficient opportunity to apply its expertise to develop regulations in conformity with the statutory scheme”).
For these reasons, we dismiss the appeal.

Appeal dismissed.

See 103 Code Mass. Regs. §§ 423.00 (2007).

The inmate in LaChance, who was represented by the same counsel as the plaintiffs, additionally sought monetary damages. 463 Mass, at 768, 772.

See 103 Code Mass. Regs. §§ 421.00 (1994).

The quoted language comes from the judge’s memorandum and order allowing the DOC’s motion to dismiss; the judgment itself does not state whether dismissal was with or without prejudice. However, pursuant to Mass.R.Civ.R 41(b)(3), as amended, 454 Mass. 1403 (2009), a judgment of dismissal does not operate as an adjudication on the merits if “the court in its order for dismissal [so] specifies.”

The two original plaintiffs had been released from SMU confinement by April of 2012 when the amended complaint was filed. All but one of the additional named plaintiffs had been released from SMU confinement when the DOC filed its status report in December of 2012. It is uncontested that this inmate has since been released.

In a similar vein, the case law reveals that such litigation often has been pursued through class actions, as the plaintiffs here sought to do. See, e.g., *631 Haverty v. Commissioner of Correction, 437 Mass. 737 (2002), S.C., 440 Mass. 1 (2003); Longval v. Commissioner of Correction, 448 Mass. 412 (2007). At least one Massachusetts opinion states that in a case that purportedly has been brought as a class action, a judge should, at least in some circumstances, address class certification before considering whether the case has become moot as to the named plaintiffs. Wolfs. Commissioner of Pub. Welfare, 367 Mass. 293, 297 (1975). Subsequent cases have treated Wolf as an example of the doctrine that courts may hear moot cases if they raise important issues that are “capable of repetition, yet evading review,” not as establishing a distinct procedural rule applicable to class actions. See, e.g., Gonzalez s. Commissioner of Correction, 407 Mass. 448, 451-453 (1990).

The amended complaint did not specify that the plaintiffs were confined in an SMU while “awaiting action,” but both sides appear to have treated their confinement as such in their briefs. In any event, awaiting action status is subject to the review process governing SMUs generally. See 103 Code Mass. Regs. § 430.21(2) (2006).

The plaintiffs alleged that SMUs across the Commonwealth had equivalent or worse conditions than designated DSUs, and that allegation must be accepted as true in the context of a motion to dismiss. The dissent characterizes inmates held in SMUs under such conditions as a mere “subgroup” of all inmates held in SMUs. The extent to which this is true is not developed in this record.

 As the plaintiffs acknowledge, the Supreme Judicial Court previously has recognized that prison officials can temporarily confine inmates in segregation for “brief’ periods without providing them the protections afforded by the DSU regulations. Haverty v. Commissioner of Correction, 437 Mass. 737, 764 (2002), S.C., 440 Mass. 1 (2003). The court further indicated that by the term “brief,” it “ha[d] in mind days, not weeks.” Id. at 764 n.36. The DSU regulations themselves require a hearing within fifteen days of an inmate’s being placed in segregated confinement, or within thirty days if the inmate is being investigated or charged with a disciplinary offense. 103 Code Mass. Regs. § 421.08(3) (1994). This appears to be the principal procedural protection that the plaintiffs are seeking to secure.

In Haverty, the court stated that except where an inmate was held in segregated confinement for only a brief period (see note 11, supra), the DSU regulations applied “to all placement of prisoners in segregated confinement for nondisciplinary reasons for an indefinite period of time.” 437 Mass, at 760. As the plaintiffs acknowledge, LaChance, 463 Mass, at 774-775, clarified that the holding of Haverty is not based on Federal due process requirements. However, as noted, LaChance arose as an interlocutory appeal of a judge’s decision that DOC officials were not entitled to qualified immunity, and the court’s opinion did not directly address whether compliance with the DSU regulations was required by State law. Because LaChance cites to Haverty with approval, the plaintiffs argue that the broad statements in Haverty about the applicability of the DSU regulations continue to stand and that those statements must be *634 grounded either in State constitutional law or in the wording of the DSU regulations themselves. Their amended complaint also cited to G. L. c. 127, § 32 (requiring that inmates be treated with merited “kindness”), but the plaintiffs have abandoned that argument on appeal.

The DOC does not concede that point and contends that the language in Haverty, 437 Mass, at 760, on which the plaintiffs seek to rely does not apply to inmates held in an SMU “awaiting action,” because such confinement cannot be said to be for an “indefinite period of time” even if the event for which they are awaiting action has not been scheduled.

In support of its position, the DOC accurately points out that even though the LaChance court agreed with the motion judge’s conclusion that conditions at the SMU were at least as restrictive as in DSUs, 463 Mass, at 774, the court characterized the case law requiring application of the DSU regulations as “not directly controlling.” Id. at 775. In addition, the court referred to the DSU regulations merely as “other DOC regulations” that “informed in part” the court’s decision. Id. at 777 n.14.