NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12015

ROBERT CANTELL & others[1]  vs.  COMMISSIONER OF CORRECTION
& others.[2]


Suffolk.     March 10, 2016. - October 21, 2016.

Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
Hines, JJ.[3]


Commissioner of Correction.  Administrative Law, Regulations.
    Imprisonment, Segregated confinement.  Due Process of Law,
    Prison classification proceedings, Prison regulation.  Moot
    Question.  Practice, Civil, Moot case, Dismissal of appeal,
    Class action.



Civil action commenced in the Superior Court Department on
January 20, 2012.

---

[1] Derrick Maldonado, John T. Fernandes, and Albert Jackson.

[2] Superintendent, Massachusetts Treatment Center;
Superintendent, Old Colony Correctional Center; Superintendent,
Massachusetts Correctional Institution (MCI), Cedar Junction;
Superintendent, MCI, Shirley; Superintendent, MCI, Norfolk;
Superintendent, MCI, Concord; Acting Superintendent, North
Central Correctional Institution, Gardner; Superintendent, MCI,
Framingham; and Superintendent, Souza-Baranowski Correctional
Center.

[3] Justices Spina, Cordy, and Duffly participated in the
deliberation on this case prior to their retirements.

Motions to dismiss and for class certification were heard by Elizabeth M. Fahey, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

Bonita Tenneriello for the plaintiffs.
Sheryl F. Grant for the defendants.
The following submitted briefs for amici curiae:
Amy Fettig & Jamelia N. Morgan, of the District of Columbia, Phillip Kassell, Matthew R. Segal, & Jessie J. Rossman for American Civil Liberties Union & others.
Ruth A. Bourquin, Deborah Harris, Margaret E. Monsell, & Jamie A. Sabino for Massachusetts Law Reform Institute & others.
Adam Sanders, pro se.

BOTSFORD, J.  The named plaintiffs in this putative class action are inmates serving criminal sentences in various Massachusetts prison facilities.  For varying lengths of time, each of them has been placed in a "special management unit" (SMU) in nondisciplinary administrative segregation.  In January, 2012, the plaintiffs commenced this action against the Commissioner of Correction (commissioner) and the superintendents of the correctional institutions in which the plaintiffs were housed (collectively, defendants).  The plaintiffs allege that their placements in the SMUs, essentially in conditions of solitary confinement, violate their State and Federal constitutional rights to due process as well as regulations of the Department of Correction (department), and they seek to represent a class of similarly situated prisoners confined in SMUs.  In early 2013, following the release of this

court's decision in LaChance v. Commissioner of Correction, 463
Mass. 767 (2012) (LaChance I), a judge in the Superior Court
denied the plaintiffs' motion for class certification and
allowed the defendants' motion to dismiss the plaintiffs'
amended complaint.

The plaintiffs appealed to the Appeals Court.[4]  A divided
panel of that court dismissed the appeal as moot because by then
it was undisputed that no named plaintiffs remained in SMUs.
Cantell v. Commissioner of Correction, 87 Mass. App. Ct. 629
(2015).  The dissenting justice concluded that in light of the
class action allegations in the plaintiffs' amended complaint,
even if the named plaintiffs were no longer confined in SMUs,
the case was not moot, and the court had a duty to decide the
plaintiffs' appeal on its merits.  Id. at 635-639 (Rubin, J.,
dissenting).  We allowed the plaintiffs' application for further
appellate review.  We agree with the dissenting justice of the
Appeals Court that the appeal is not moot, and we also agree
that LaChance I does not resolve the merits of all the
plaintiffs' claims.  We reverse the Superior Court's judgment of

_____

[4] Two of the plaintiffs named in the amended complaint are
not parties to the appeal.

dismissal and remand the case to that court for further proceedings consistent with this opinion.[5]

Background. The plaintiffs' amended complaint alleges, in summary, the following. The plaintiffs are representatives of "a class composed of all prisoners held in non-disciplinary segregation in an SMU," and the class is so numerous that joinder of all is impracticable. See Mass. R. Civ. P. 23 (a), 365 Mass. 767 (1974).[6] Each of the named plaintiffs has been held in nondisciplinary administrative segregation in an SMU operated under the department's SMU regulations, 103 Code Mass. Regs. §§ 423.00 (1995).[7] While confined in an SMU, prisoners are

---

[5] We acknowledge the amicus briefs submitted by the Massachusetts Law Reform Institute, Center for Public Representation, National Consumer Law Center, and Justice Center of Southeastern Massachusetts; the American Civil Liberties Union, American Civil Liberties Union of Massachusetts, and the Mental Health Legal Advisors Committee; and Adam Sanders.

[6] The amended complaint further alleges that the plaintiffs' claims include common questions of fact and law applicable to all members of the class and these questions predominate; the defendants have acted and refused to act on grounds generally applicable to the class so that the final declaratory and injunctive relief would be appropriate to the entire class; the plaintiffs have a strong personal liberty interest in the outcome of the case, are represented by competent counsel, and will adequately and fairly protect the interests of the class; and a class action is superior to any other method to resolving the controversy. See Mass. R. Civ. P. 23 (a), (b), 365 Mass. 767 (1974).

[7] "Administrative [s]egregation" is defined in 103 Code Mass. Regs. § 423.06 (1995) as follows:

locked in their individual cells for twenty-three hours per day, with permitted recreation in a small, outdoor cage for one hour per day on weekdays and no permitted recreation on weekends; each prisoner must eat all meals alone in his or her cell; the prisoners are permitted to shower and shave no more than three times per week; all visits are noncontact visits, and these are generally limited to two visits per week of no more than one hour's duration; prisoners are not allowed to visit the general prison library, have no access to employment or to rehabilitative, therapeutic, or educational programs and therefore no access to programs from which they might earn "good time" sentence credits or reductions; they may not attend communal religious services; and they are substantially restricted, compared to the general prison population, in terms of what they may purchase and how much money they may spend at the prison canteen.  These conditions are far more restrictive than the conditions and level of segregation applicable to general population prisoners in maximum security facilities. The conditions are also at least as restrictive as those applied

---

"A temporary form of separation from general population used when the continued presence of the inmate in the general population would pose a serious threat to life, property, self, staff or other inmates, or to the security or orderly running of the institution, e.g., inmates pending investigation for a disciplinary or criminal offense or pending transfer may be placed in administrative segregation."

to units designated as "departmental segregation units" (DSUs) and governed by the DSU regulations appearing as 103 Code Mass. Regs. §§ 421.00 (1994). However, none of the plaintiffs has been provided the procedural protections required by the DSU regulations, or the visitation, canteen, and other privileges included within the DSU regulations.[8]

The amended complaint's legal claims are that by maintaining the plaintiffs in nondisciplinary administrative segregation conditions without holding hearings to determine whether each posed a serious or substantial threat to themselves or others, and by denying other rights included in the DSU regulations, the defendants have violated the plaintiffs' rights under the DSU regulations, the plaintiffs' constitutional rights to due process protected by the United States Constitution and the Massachusetts Declaration of Rights (claims the plaintiffs

---

[8] The plaintiffs point to the following procedural protections contained in the DSU regulations: before being placed in nondisciplinary segregation, each prisoner must be afforded a timely hearing to determine whether the prisoner poses a threat sufficient to justify the segregation, see 103 Code Mass. Regs. § 421.08(3); no prisoner may be held in segregated, restrictive, nondisciplinary confinement without receiving a hearing after fifteen days, or thirty days if awaiting action on a disciplinary charge, and those time limits may not be extended absent "extraordinary circumstances," see id.; such prisoners are entitled to receive a conditional release date and a specified set of conditions that, if met, could earn them release from restrictive confinement, see 103 Code Mass. Regs. § 421.15(2); prisoners are also entitled to the visitation rights, canteen purchases, and other privileges and programs set out in 103 Code Mass. Regs. §§ 421.20 and 421.21.

pursue under 42 U.S.C. § 1983), and the plaintiffs' statutory right to equal "kindness" provided by G. L. c. 127, § 32. The plaintiffs seek declaratory and injunctive relief to declare and enforce these rights.

On January 20, 2012, the plaintiffs filed a motion for class certification.[9] Before the motion was heard or ruled on, LaChance I was decided. The plaintiff in LaChance I was, or had been, confined to the SMU in the Souza-Baranowski Correctional Center, and his substantive claims relating to his entitlement to the procedural and other protections incorporated in the DSU regulations are substantially mirrored in the plaintiffs' amended complaint in the present case. The motion judge in this case concluded that the LaChance I decision effectively resolved the plaintiffs' claims by defining the entire scope of procedural protections to which the plaintiffs were entitled as prisoners confined in SMUs. For this reason, and because the

---

[9] The defendants take issue with the fact that the motion to certify the class was filed by the original two named plaintiffs, Robert Cantell and Derrick Maldonado, before the plaintiffs filed their amended complaint, and by the time the amended complaint was filed in April, 2012, neither Cantell nor Maldonado was still confined to a special management unit (SMU). In light of the amended complaint, which repeated the original complaint's class action allegations, and in light of the fact that at the time the amended complaint was filed, one or more of the named plaintiffs was housed in an SMU, we consider the motion to certify the class as applicable to the amended complaint. This was the position implicitly taken by the Superior Court judge who considered and denied the motion to certify.

department had agreed to provide the plaintiffs with the procedural protections described in LaChance I, the judge ruled that class certification was unnecessary and that dismissal of the plaintiffs' amended complaint was appropriate. The judge ordered the defendants to "extend the benefits" of our opinion in LaChance I to "all prisoners held in administrative segregation on awaiting action status."

At the time of the motion judge's decision, one of the named plaintiffs, Albert Jackson, remained in an SMU. However, as the Appeals Court's decision noted, when the plaintiffs' appeal was before that court, it was uncontested that none of the named plaintiffs was still confined in an SMU. Cantell, 87 Mass. App. Ct. at 630. There is nothing in the record to suggest that any named plaintiff's status has changed since the date of the Appeals Court decision, but there also is nothing before us to suggest that any of the named plaintiffs has completed his sentence and has been released from prison.

Discussion. 1. Legal background. This case concerns the department's policies and practices relating to the conditions of confinement for prisoners held in nondisciplinary administrative segregation and apart from the general population. The specific focus here is on SMUs, one type of

administrative segregation unit.[10]  However, the department

historically has had and continues to have a number of different

types of and names for such units, including, but not limited

to, DSUs.  In Hoffer vs. Fair, No. SJ-85-0071 (Mar. 3, 1988), a

single justice of this court ordered that the then existing DSU

regulations be amended to provide greater procedural protections

and some greater privileges to prisoners placed in

nondisciplinary administrative segregation -- basically,

solitary confinement -- in DSUs.  The department promulgated in

substance the DSU regulations currently codified at 103 Code

---

[10] The SMU regulations provide that "[p]lacement in administrative segregation/protective custody [in an SMU] may occur in instances such as, but not limited to, when an inmate:

"(a) Is awaiting a hearing for a violation of institution rules or regulations;

"(b) Is awaiting an investigation of a serious violation of institution rules or regulations;

"(c) Is pending investigation for disciplinary offenses or criminal acts that may have occurred while incarcerated;

"(d) Requests admission to administrative segregation for his/her own protection or staff recommends that placement in or continuation of such status is necessary for the inmate's own protection and that no reasonable alternatives are available;

"(e) Is pending transfer;

"(f) Is pending classification; [and]

"(g) Is placed in administrative segregation following a disciplinary hearing."

103 Code Mass. Regs. § 423.08(1).

Mass. Regs. §§ 421.00 in response; these regulations remain in effect.[11] See Haverty v. Commissioner of Correction, 437 Mass. 737, 740, 744-746, 760 (2002), S.C., 440 Mass. 1 (2003). We made clear in Haverty that under the department's DSU regulations and as a matter of due process, "the procedural protections contained in 103 Code Mass. Regs. §§ 421.00 must be afforded to all prisoners before they are housed in DSU-like conditions," with an exception for those whose stay in such a DSU-like unit is expected to be brief -- i.e., days, not weeks. Id. at 760, 763-764 & n.36. See Longval v. Commissioner of Correction, 448 Mass. 412, 413-416 (2007), and cases cited at 416; Hoffer v. Commissioner of Correction, 412 Mass. 450, 455 (1992).

LaChance I was a case brought by a prisoner at the Souza-Baranowski Correctional Center who was held for more than ten months in administrative segregation, on awaiting action status, in that facility's SMU. LaChance I, 463 Mass. at 768-771. He claimed that the conditions of confinement in the SMU were substantively identical to the conditions of a DSU, that he was therefore entitled to the protections set out in the DSU

---

[11] In 1995, the department filed in the county court a motion to vacate or amend the single justice's 1988 order in Hoffer vs. Fair, No. SJ-85-0071 (Mar. 3, 1988). A single justice of this court denied the motion, and no appeal was taken. See Haverty v. Commissioner of Correction, 437 Mass. 737, 738-739, 758 & n.27 (2002), S.C., 440 Mass. 1 (2003).

regulations, and that the refusal of the prison authorities to apply those regulations to him violated his rights under the department's regulations as well as his due process rights under the Federal and Massachusetts Constitutions. Id. at 772. A judge of the Superior Court determined that LaChance was entitled to the procedural protections in the DSU regulations, and granted partial summary judgment to LaChance on his claims of constitutional violations. See id. at 772-773. The judge also granted summary judgment to the defendant correction officials on LaChance's claim for damages under the Massachusetts Civil Rights Act, G. L. c. 12, §§ 11H & 11I, and his claims against two of the defendants in their official capacities. LaChance I, supra at 773. However, the judge denied the defendants' motion for partial summary judgment on LaChance's claims for damages against the defendants in their individual capacities under 42 U.S.C. § 1983 (§ 1983), rejecting the defendants' argument that they were entitled to qualified immunity as a matter of law. LaChance I, supra. Exercising their right to invoke the doctrine of present execution with respect to this denial,[12] the defendants in LaChance I filed an interlocutory appeal in the Appeals Court, and we transferred the appeal to this court on our own motion. Id. at 768.

---

[12] See, e.g., Maxwell v. AIG Domestic Claims, Inc., 460 Mass. 91, 97-98 (2011); Littles v. Commissioner of Correction, 444 Mass. 871, 875-876 (2005).

The issue directly before us in LaChance I was the propriety of the judge's denial of partial summary judgment on the defendants' claim of qualified immunity from liability for damages under § 1983. We concluded that an inmate placed in administrative segregation on awaiting action status in an SMU or other designated unit is entitled as a matter of due process to certain procedural safeguards, including notice of the basis on which he or she is so detained, a hearing at which the inmate may challenge that basis, and a written posthearing notice explaining the classification decision; and "that in no circumstances may an inmate be held in segregated confinement on awaiting action status for longer than ninety days without [such] a hearing." Id. at 776-777. However, we also concluded that the plaintiff's claims for damages against the individual defendants under § 1983 were barred by the doctrine of qualified immunity. See id. at 777. We did so because as a matter of constitutional requirement, "the outer limit of what constitutes 'reasonable' segregated confinement on awaiting action status without the safeguards of procedural due process" had not been clearly established as of 2006, the relevant date in LaChance I. See id. at 778. Indeed, as we stated in the opinion, our determination that "segregated confinement on awaiting action status for longer than ninety days gives rise to a liberty interest entitling an inmate to notice and a hearing" was one

that we reached "for the first time" in that case.  See id.[13]  We
therefore remanded the case to the Superior Court for entry of
an order allowing the defendants' motion for summary judgment on
LaChance's claims under § 1983 against them in their individual
capacities.[14]  See id.

As discussed, the motion judge in this case based her
dismissal of the plaintiffs' amended complaint on LaChance I.

2.  Mootness.  The defendants argue that this appeal is
moot because none of the named plaintiffs remains in an SMU, and
therefore none is a member of the class the plaintiffs seek to
have certified.  The Appeals Court reached this same conclusion
that the appeal is moot because the named plaintiffs are no
longer in SMUs, and further concluded that, in the circumstances
presented, it would be "improvident" to consider and resolve the

---

[13] As discussed infra, see notes 19 & 20 and accompanying
text, it was necessary in LaChance I to consider the
requirements of due process under the United States Constitution
in particular, because to be entitled to damages against the
individual defendants under 42 U.S.C. § 1983, LaChance was
required to prove that, as of 2006, it was "clearly established"
as a matter of Federal constitutional law that keeping a
sentenced prisoner in segregated confinement on awaiting action
status for longer than a particular period of time without a
hearing incorporating certain procedural protections violated
the prisoner's due process rights.

[14] We also affirmed the Superior Court's order allowing (1)
LaChance's motion for partial summary judgment on his
constitutional claims, and (2) the defendants' motions for
summary judgment on the Massachusetts Civil Rights Act claim and
claims against certain defendants in their official capacities.
LaChance I, 463 Mass. at 778.

plaintiffs' substantive claims on their merits.  See Cantell, 87

Mass. App. Ct. at 630-631, 635.[15]  However, we agree with the

dissenting justice that the appeal is not moot.  See id. at 636-

637 (Rubin, J., dissenting).  It is not moot because the

plaintiffs brought this case as a putative class action, and the

class action allegations contained in the amended complaint

remain operative until a judge has considered and rejected them

on their merits.  See Wolf v. Commissioner of Pub. Welfare, 367

Mass. 293, 297-298 (1975) (adopting rule followed by number of

Federal courts "that a class action is not mooted by the

_____

[15] The Appeals Court stated that it reached its
determination of mootness as a matter of discretion, because it
interpreted LaChance I to require the department to promulgate
new regulations, see Cantell, 87 Mass. App. Ct. at 632, 635, and
there was value in waiting for those new regulations to be
issued before assessing the merits of the plaintiffs' due
process claims.  Id. at 635.

To date, the department has not promulgated any such
regulations; the department's response to the LaChance I
decision has been limited to a memorandum from the commissioner,
dated February 5, 2013, amending the "standard operating
procedures" for SMUs "to reflect the additional review
requirements for inmates on awaiting action or protective
custody status for (90) days or more."  The amended procedures
provide that (1) within ninety days of an inmate's placement in
an SMU and every ninety days thereafter, a correctional program
officer is to review the placement and conduct a hearing, of
which the inmate is entitled to forty-eight hours' notice and
the right to attend and offer a verbal or written statement (but
not to call witnesses or to have counsel); (2) the program
officer is to make a recommendation within two days of the
hearing as to whether the inmate should continue being confined
in the SMU; (3) the inmate may appeal from that recommendation
to the superintendent of the facility; and (4) the
superintendent's decision is final.

settlement or termination of the named plaintiff's individual claim"). This is particularly true where, as the plaintiffs argue is the case here, it is within the defendants' power voluntarily to cease the allegedly wrongful conduct with respect to any named plaintiff by unilaterally deciding to release him from an SMU. "If the underlying controversy continues, a court will not allow a defendant's voluntary cessation of his allegedly wrongful conduct with respect to named plaintiffs to moot the case for the entire plaintiff class." Id. at 299.[16] The statement applies to the present case: the alleged wrongs set out in the amended complaint continue to affect the putative

---

[16] The Appeals Court suggested that our decision in Wolf has been essentially superseded or at least limited by later decisions of this court, such that Wolf is presently best understood as an illustration of the principle that courts may hear moot cases if there is an important issue capable of repetition yet evading review, and "not as establishing a distinct procedural rule applicable to class actions." Cantell, 87 Mass. App. Ct. at 630 n.8. We do not agree that we have limited Wolf in this manner. The statement in Wolf that, ordinarily, a judge should not dismiss a putative class action as moot even though actions taken by the defendant may have rendered moot the named plaintiff's particular claims is a principle that remains good law, as does the observation that "[i]n fact, to establish mootness in such circumstances, a defendant bears a heavy burden of showing that there is no reasonable expectation that the wrong will be repeated; and a defendant's mere assurances on this point may well not be sufficient." Wolf, 367 Mass. at 299. Our decision in Gonzalez v. Commissioner of Correction, 407 Mass. 448 (1990), cited by the Appeals Court, see Cantell, supra, is not to the contrary. We specifically noted there, citing Wolf, that in a case where "a defendant's voluntary cessation of allegedly wrongful conduct toward the named plaintiff, thereby mooting his or her claim," has occurred, it may be appropriate to certify the putative class despite this mootness issue. Gonzalez, supra at 452.

class of individuals who remain confined to SMUs.[17]  In these circumstances, the plaintiffs' appeal is not subject to dismissal on mootness grounds.

3.  Dismissal of the amended complaint on the merits.  The motion judge ruled that certification of a plaintiff class was unnecessary, and indeed the named plaintiffs' amended complaint should be dismissed, based on her conclusion that LaChance I in effect fully defined the parameters of the plaintiffs' due process rights, and that the defendants had agreed that they would implement those rights in relation to every prisoner confined to an SMU on awaiting action status.[18]  Although her memorandum of decision does not so state, it appears that the judge interpreted LaChance I to overrule, in effect, Haverty and other decisions in which we concluded that the procedural protections contained in the DSU regulations must be provided to all prisoners in nondisciplinary administrative segregation who

---

[17] It is also true case that because the named plaintiffs in this case remain incarcerated, they remain subject to being returned to confinement in an SMU.  They continue, therefore, to have a real stake in the outcome.

[18] As discussed, the rights described in LaChance I were the right "to notice of the basis on which [the inmate] is . . . detained [in administrative segregation]; a hearing at which [the inmate] may contest the asserted rationale for his confinement; and a posthearing written notice explaining the reviewing authority's classification decision. . . .  [I]n no circumstances may an inmate be held in segregated confinement on awaiting action status for longer than ninety days without a hearing."  LaChance I, 463 Mass. at 776-777.

are subject to conditions similar to those in the DSUs. See

Haverty, 437 Mass. at 740, 760, 763-764. In fairness, the scope

of this court's decision in LaChance I was not fully explained.

The motion judge, however, erred in her interpretation of our

decision and in her dismissal of the amended complaint based on

that interpretation.

As mentioned, LaChance I was an interlocutory appeal of a

decision denying the defendants' claim of qualified immunity

from liability for damages under § 1983. In considering the

defendants' appeal, it was necessary to focus on LaChance's

Federal due process claims because LaChance would be entitled to

damages under his § 1983 claims only if the defendants knowingly

violated LaChance's rights under the United States

Constitution.[19] See Cantell, 87 Mass. App. Ct. at 638 (Rubin,

J., dissenting) ("the State law issue decided in Haverty was

different from the issue the court was addressing in LaChance

[I], that of Federal due process in the context of 42 U.S.C.

---

[19] See, e.g., Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other ground, Daniels v. Williams, 474 U.S. 327, 328 (1986) (two essential elements of action under 42 U.S.C. § 1983 are [1] that challenged conduct be committed by person acting under color of State law, and [2] "whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States" [emphasis added]); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970) (same).

§ 1983" [emphasis in original]).[20]  At no point in LaChance I did we suggest that we intended to overrule Haverty and related cases; in fact, the opposite is true.  See LaChance I, 463 Mass. at 774-775, discussing Haverty with approval, and specifically noting the holding of Haverty that "under [the department's] regulations, indefinite confinement in any unit where conditions are substantially similar to those of a DSU entitles an inmate to the protections afforded by the DSU regulations."  Id. at 774.

Haverty and related decisions of this court and the Appeals Court confirm the continuing viability of the department's DSU regulations and their application to "all placements of prisoners in segregated confinement for nondisciplinary reasons

---

[20] In LaChance I, we discussed LaChance's "due process rights" without drawing any distinction between the due process protections provided by the United States Constitution and the Massachusetts Constitution.  As stated in the text, however, for purposes of deciding the individual defendants' claim of qualified immunity from suit under 42 U.S.C. § 1983, it was essential to focus on LaChance's due process rights protected under the Federal Constitution.  We had no reason to, and did not, consider in LaChance I whether the extent of due process protections to which a prisoner in the position of LaChance is entitled under art. 12 of the Massachusetts Declaration of Rights is different in scope from the protections provided by the due process clause in the United States Constitution.  (To the extent that Haverty, 437 Mass. at 762-763, concluded that the rights of the plaintiffs in that case to have the DSU regulations applied to them was constitutionally required as a matter of due process, the conclusion appears to have had its roots in the decision of the single justice in Hoffer vs. Fair, No. SJ-85-0071.  See Haverty, supra at 738-739, 744-745.  Hoffer vs. Fair itself was based on the requirements of due process under the Constitution of the Commonwealth.)

for an indefinite period of time; in other words, those prisoners whom prison authorities determine will interfere with the management of the prison unless they are segregated from the general prison population." Haverty, 437 Mass. at 760. See id. at 740. See also Longval, 448 Mass. at 416, and cases cited. Because LaChance I did not overrule Haverty, the plaintiffs are entitled to pursue in the Superior Court their motion to certify a class, and, on the merits, their claims that as prisoners confined to SMUs, they are entitled to have the DSU regulations applied to them and entitled to all the procedural protections and other rights included within those regulations.[21]

Conclusion. The judgment of the Superior Court is reversed, and the case remanded to that court for further proceedings consistent with this opinion.

So ordered.

---

[21] LaChance I was not a class action, and the plaintiffs here, although raising similar regulatory and constitutional challenges as LaChance, were not parties to the LaChance I case. Moreover, LaChance was confined to an SMU on awaiting action status; the class the plaintiffs seek to represent is broader. Contrary to a suggestion of the plaintiffs in their brief, it is also the case that the motion judge in the present case has not made any findings of fact, but ruled on nonevidentiary motions. Accordingly, neither LaChance I nor prior proceedings in this case have resolved the merits of the plaintiffs' claims.